THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON
TOMES, Defendant-Appellant.

First District (3rd Division)   No. 1—95—3395

Opinion filed September 30, 1996.—Rehearing denied November 14, 1996.

Brodsky & Hoxha, of Chicago (Joel A. Brodsky, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Nancy Faulls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant appeals his jury convictions for attempted first degree murder and aggravated discharge of a firearm, raising a variety of issues. For the reasons that follow, we affirm defendant's conviction for aggravated discharge of a firearm and reverse the conviction for attempted murder by reason of the response by the trial court to an inquiry from the jury.

The following represents the facts relevant to defendant's appeal. In June of 1994, Tommy Selover (Selover) and Jason Tomes (defendant) agreed to become roommates in a basement apartment owned by Selover's father. Defendant was required to submit a $100 security deposit and pay his share of the rent and utilities. Approximately three weeks later, Selover "evicted" defendant because defendant was dealing drugs out of the apartment.

On July 4, 1994, defendant and Jose Ortiz entered Selover's apartment and demanded return of defendant's security deposit. Defendant was armed with a shotgun. Selover refused and defendant struck him in the face with the stock of the shotgun. Selover filed a police report.

On August 26, 1994, at approximately 1 a.m., Selover was watching television at his girlfriend Rosalinda's second-floor apartment. Ishmel Garcia called Rosalinda's name from the street below. Rosalinda opened the window and Garcia asked to use her bathroom. Rosalinda reluctantly obliged. Selover went downstairs to open the door for Garcia. As Selover unlocked the door, Garcia and defendant "rushed in" and confronted Selover.

Defendant grabbed Selover by the neck, threw him against the wall and demanded his money. He also suggested that it would be imprudent for Selover to testify in court. Defendant lifted up his

shirt and removed a .38-caliber handgun from his waistband. Garcia was also armed with a .38.

Rosalinda heard the struggle below and, from the second-floor landing, observed defendant and Garcia, both of whom were armed with handguns, confronting Selover. Defendant held Selover by the neck with one hand and the gun in his free hand. Rosalinda heard defendant tell Selover that he "owed him money." Garcia then told Rosalinda that they "wanted" Selover and that she had "nothing to do with it." Rosalinda retreated into her apartment and phoned the police.

Defendant then aimed and fired the gun in the direction of Selover's head. Selover turned his head, and the bullet entered the wall behind him. Rosalinda heard the shot from her apartment. Defendant and Garcia each struck Selover and fled the building. Selover observed three additional men leave with defendant and Garcia, one of whom Selover identified as Jose Ortiz.

Chicago police officer Oswald responded to Rosalinda's call and observed what he believed to be a bullet hole approximately 75 inches off the ground in the hallway wall. After photographing the hole, Officer Oswald attempted to dig the bullet out of the wall, but discontinued his efforts after determining that recovery of the bullet would require extensive demolition, and, given the lateness of the hour and the building's other occupants, he decided such work was best done later in the morning.

Later that day, police evidence technician Goodson returned to the scene and recovered a bullet from the wall. Goodson photographed the scene and bullet, which he believed to be a .38 caliber. Defendant was arrested in connection with the alleged assault and shooting. At the time of his arrest, defendant was not wearing a shirt and no weapon was recovered.

At trial, defendant called Dunia Rodriquez, who testified to knowing both Selover and defendant and to observing Selover display signs of anger toward defendant. Defendant also called Detective Mannion. Mannion testified to Selover's statement that defendant choked him, hit him on the head with a handgun, kicked him in the side and then fired a shot at his head. Mannion did not order a gun residue test to be done on defendant. Mannion testified that such a test would have been rendered inconclusive if defendant had washed his hands following the shooting.

Lastly, defendant called Officer Reina, who testified that no search was made for defendant's clothing at the time of his arrest. (The implication being that since Selover stated that defendant lifted up his shirt to remove the gun, and was arrested without a shirt, Selover's statement is unreliable.)

The jury found defendant guilty of attempted first degree murder and aggravated discharge of a firearm. The trial court sentenced defendant to 12 years' imprisonment. Defendant now appeals.

Initially, we address defendant's contention that the trial court's response to the jury's note denied him a fair trial. During deliberations, the jurors sent a note to the trial court stating that they had reached a decision on the aggravated discharge of a firearm charge, but were "split" on the charge of attempt murder. The note asked if the charge of aggravated discharge of a firearm could "stand on itself." The trial court responded with a note, stating "please continue to deliberate on the charge of attempt first degree murder." Subsequently, defendant was found guilty of both offenses. Defendant maintains that the trial court's response was inadequate and misleading.

■ Defendant suggests that the trial court's response "implied that the jury *must* find the Defendant guilty of attempt first degree murder in order for their verdict on the aggravated discharge of a firearm charge to stand." This is a persuasive interpretation. Generally, a trial court has a duty to instruct the jury where clarification is requested and juror confusion is evident, whether or not the jury was properly instructed originally. *People v. Childs*, 159 Ill. 2d 217, 228 (1994). However, a trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. *People v. Reid*, 136 Ill. 2d 27, 39 (1990). The failure to answer or the giving of a response that provides no answer to the particular question of law posed has been held to be prejudicial error. *E.g., People v. Shannon*, 206 Ill. App. 3d 310 (1990); *People v. Bryant*, 176 Ill. App. 3d 809 (1988).

In *Childs*, the jury wanted to know whether the defendant could be found guilty of armed robbery and either voluntary or involuntary manslaughter, or if a finding of guilty of armed robbery mandated a guilty of murder verdict. *Childs*, 159 Ill. 2d at 229. The trial court replied, without consulting defense counsel, "[y]ou have received your instructions as to the law, read them and continue to deliberate." *Childs*, 159 Ill. 2d at 225. The supreme court found the trial court's response "necessitates reversal of defendant's conviction." *Childs*, 159 Ill. 2d at 234.

■ In the present case, the judge's response was far more direc-

tive. Not only was the jury told to continue its deliberations, it was instructed to continue to deliberate *on the charge of attempted first degree murder*. While this is certainly susceptible to an innocent construction, it is also susceptible to a construction that directs a verdict of guilty as to attempted murder. The implications available to the jury were (1) that the verdict of guilty of aggravated discharge of a firearm could *not* "stand on itself," and (2) the jurors should resolve their indecision on the attempted murder charge against defendant. Defendant was denied a fair trial, and we reverse his conviction for attempted murder. We do not remand for a new trial or resentencing on this charge because the sentence for aggravated discharge of a firearm, which was 12 years, is to be served concurrently with the 12-year sentence for attempted murder, and we find the sentence imposed for aggravated discharge of a firearm appropriate.

We now address defendant's additional arguments as they relate to the conviction for aggravated discharge of a firearm. Defendant argues that the trial court's ruling *in limine* to exclude mention of the fact that three misdemeanor theft charges against Selover were stricken with leave to reinstate (SOL'd) by the State while the charges against defendant were pending constitutes reversible error. Defendant also argues he should have been allowed to question Selover about a parole violation that occurred during the pendency of defendant's trial.

■ The right to cross-examine a witness concerning his biases, prejudices or ulterior motives is protected by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; see *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Moreover, the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. The widest latitude should be given the defense on cross-examination when trying to establish a witness' bias or motive. *People v. Gonzalez*, 104 Ill. 2d 332, 337 (1984). A trial court has no discretion to deny a defendant this right, but only to preclude repetitive or unduly harassing interrogation. In this regard, a defendant need not show interest or motive in that any promises of leniency have, in fact, been made to the witness by the State or that any expectations of special favor exist in the mind of the witness, before cross-examining a witness as to possible bias. Further, the defense is entitled to inquire into such promises or expectations whether they are based on fact or are simply imaginary. *People v. Triplett*, 108 Ill. 2d 463, 475-76 (1985).

■ In the present case, the trial court, outside the presence of the jury, allowed defense counsel to question Selover's motives for testify-

ing. The trial court specifically found that Selover's motivation for testifying was not the result of any promise of leniency by the State. While this finding is probably accurate—Selover had plenty of his own motivation to see defendant incarcerated—allowing counsel to question Selover in the jury's absence was fairly meaningless. In *People v. Baptiste*, 37 Ill. App. 3d 808, 813 (1976), the court found:

> "It was for the jury to decide whether the pending [criminal] charges against James provided a further motive to offer false testimony beyond the self-evident interest of a victim of a crime. The ruling of the trial court restricting cross-examination prevented the jury from hearing evidence which could have affected the credibility of James and Avery. The defendants had the right to present this evidence to the jury under their theory that the State's witnesses were unbelievable."

The State argues that the jury had ample evidence with which to judge Selover's credibility, including knowledge of his probationary status for felony forgery, two convictions for misdemeanor theft and his "anger" toward defendant for leaving Selover with a $1,000 phone bill. However, although this may implicate Selover's credibility generally, it does not have the same effect as defense counsel's attempt to establish that Selover's three most recent theft charges were SOL'd in exchange for testimony against defendant.

Conversely, there is nothing in this record that suggests or substantiates a "deal" between Selover and the State. Moreover, although Selover was the only person to see defendant fire the shot, apart from defendant's companion, Garcia, Rosalinda heard the shot and witnessed the struggle leading up to it, *e.g.*, defendant holding Selover in one hand and a .38 in the other. It is well established that cross-examination to show that a witness might be vulnerable to pressure, whether real or imagined, from the State regarding a pending charge is a matter of right. *People v. Fonza*, 217 Ill. App. 3d 883 (1991). However, where there is no expectation of leniency from the State regarding the pending charge, the trial court may prohibit cross-examination regarding the charge. *People v. Jackson*, 198 Ill. App. 3d 831, 842 (1990).

The trial court should have allowed counsel to question Selover about the recently SOL'd charges, and it was error to prohibit such examination. However, given the failure to show a nexus between the SOL'd charges and Selover's trial testimony, the showing of actual reasons for the witness' bias and the rather convincing evidence of defendant's guilt, this error may be harmless. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 686-87, 106 S. Ct. 1431, 1438 (1986); *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981) (where

error encroaches on a constitutional right, it is not reversible error where it can be shown to be harmless beyond a reasonable doubt). As the Supreme Court observed in *Van Arsdall*:

> "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 89 L. Ed. 2d at 686-87, 106 S. Ct. at 1438.

Our review of these factors, particularly the extensive cross-examination that was allowed and the damaging testimony of Rosalinda, indicates that the trial court's error was harmless. See *People v. Bland*, 228 Ill. App. 3d 1080, 1088-89 (1992) (error was harmless because there was overwhelming evidence of defendant's beating the victim and testimony from an eyewitness as well as the victim).

■ Defendant next argues that he was prejudiced by the erroneous admission of hearsay evidence. Officer Goodson recovered a bullet from the crime scene that he "believed based on his experience" to be .38 caliber. Selover testified that defendant's gun was a .38. Goodson's report indicated that the bullet was a "possible .38." On redirect examination, and over defense objection, the following exchange took place:

> "Q. You indicated that this item was received at the Chicago Crime Lab, is that correct?
>
> A. That's correct.
>
> Q. Are you aware that the Chicago crime lab determined this to be a .38 caliber bullet?
>
> A. Yes, I have a—I am aware that they told me it was a .38 bullet."

This is undeniably hearsay, and the State concedes "the better course of action would have been for the State to call a witness from the Chicago crime lab." Selover testified that defendant fired a .38-caliber handgun at his head. The fact that the bullet recovered was a .38 corroborates Selover's testimony, particularly since the gun itself was not found. Given the importance of this evidence, the State's failure to properly admit the caliber of the bullet into evidence is mystifying. However, error is harmless when this court can conclude, after consideration of the totality of the evidence, that a trial without

error would not end in a different result. *People v. Cisewski*, 118 Ill. 2d 163 (1987). We conclude that the error was harmless.

■ Defendant argues next that the trial court's refusal to admit the testimony of Dunia Rodriquez constitutes reversible error. Rodriquez would have testified that on four or five occasions she observed Selover demand money from defendant while the two were sharing expenses. This too is hearsay, but defendant contends it was not being offered for the truth of the statement, that defendant owed Selover money, but only to establish that Selover had a motive to falsely testify—because of residual anger over the owed money.

Defendant's contention that the statement was not being offered for its truth is unconvincing. Selover's motive to lie depends on the truth of Dunia's statement, that Selover demanded money from defendant and received nothing. Moreover, the jury was well aware that defendant owed Selover money, including a $1,000 phone bill. Dunia's testimony is hearsay and of little use to defendant. We find no abuse of discretion.

■ Defendant argues next that the trial court erred in limiting cross-examination of Selover to exclude questions about his alleged drug use. During cross-examination of Selover, the following colloquy occurred: •

"Q. Tommy, do you use drugs?
A. No, I don't.
Q. Tommy, you don't smoke marijuana on almost a daily basis?
A. No."

The State's objection on relevance grounds was sustained. Dunia Rodriquez would have testified to witnessing Selover smoke marijuana in her presence at least twice weekly.

It is well settled that evidence of drug addiction is admissible not only to impeach a witness' ability to recall or testify, but to impeach such witness' honesty and integrity in general. *People v. Galloway*, 59 Ill. 2d 158, 163 (1974). Defendant cites cases where evidence of drug addiction, not use, was improperly excluded. There is insufficient evidence of Selover's addiction to marijuana to warrant application of those cases. Accordingly, the trial court was within its discretion to find such questions "completely irrelevant."

■ Defendant further argues that he was denied a fair trial based on the prosecutor's comments during rebuttal closing argument. To constitute reversible error, the complained-of comments must have resulted in substantial prejudice to the accused, such that absent those comments the result would have been different. *People v. Morgan*, 112 Ill. 2d 111, 132 (1986).

Defendant takes issue with the following "improper" comment:

"It's correct that he (defendant) was presumed innocent before the trial began, he was cloaked in innocence as he sat over there. That was before you heard the evidence. The evidence is in ladies and gentlemen."

Essentially, the prosecutor is saying that defendant is guilty. This is not, as defendant contends, "a clear misstatement regarding presumption of innocence." Additionally, the prosecutor's comment was invited by defense counsel's earlier statement:

"[W]hen Jason comes in here, he's wearing a blue shirt now, he's wearing the presumption of innocence, not only the shirt *** that presumption of innocence never left you, never. You take that presumption back with you."

Defendant also takes issue with the following comment:

"Let me say one more thing ladies and gentlemen, at least Tommy Selover was honest and forthright enough with you to take that stand and to tell you about the trouble he has been in. He has nothing to hide."

We believe this comment refers exclusively to Selover and does not reference defendant's choice not to testify. Accordingly, we decline to find error. The remainder of the complained-of comments are not worth addressing. ●

Defendant alleges further that the trial court erred in allowing evidence of an earlier assault committed by defendant on Selover. On July 4, 1994, defendant went to Selover's apartment and, after Selover refused to return his security deposit, struck him in the head with the stock of a shotgun.

Evidence of other crimes is admissible where relevant for any purpose other than to show the propensity to commit crime. *People v. Robinson*, 167 Ill. 2d 53 (1995). Other crimes evidence may be relevant to prove *modus operandi*, intent, identity, motive or absence of mistake. *Robinson*, 167 Ill. 2d at 62-63. However, even such generally admissible evidence may be excluded if its probative value is outweighed by its prejudicial effect. *People v. Triplett*, 99 Ill. App. 3d 1077 (1981). The trial court's decision to allow such evidence will not be reversed absent a clear abuse of discretion. *Robinson*, 167 Ill. 2d at 63.

Defendant argues that the two crimes are dissimilar and, thus, the prior crime is not relevant. However, an analysis of the similarity between the prior and present crimes is applied only where the prior crime is being admitted under a theory of common design or *modus operandi*. See *People v. Illgen*, 145 Ill. 2d 353 (1991). This is not the present case.

■ The trial court allowed evidence of the prior battery under

theories of motive—hostility showing defendant likely to do further violence—and criminal intent. These are acceptable grounds upon which to admit evidence of defendant's prior battery, and the trial court specifically found that the probative value of such evidence outweighed any prejudicial effect.

■ Defendant next contends that the trial court improperly restricted his cross-examination of Officer Goodson. Defendant failed to raise this issue in his motion for new trial and, thus, has waived this issue for purposes of review. See *People v. Enoch*, 122 Ill. 2d 176 (1988).

Defendant raises additional arguments that we find unpersuasive or that relate to the vacated conviction for attempted murder. Accordingly, for the reasons set forth above, we affirm defendant's conviction for the aggravated discharge of a firearm, and its accompanying sentence, and reverse defendant's conviction for attempted murder.

Affirmed in part and reversed in part.

CERDA and GALLAGHER, JJ., concur.