FOURTH DIVISION
Filed: October 19, 2006

No. 1-04-2580

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee. | ) | |
| | ) | |
| v. | ) | No. 02 CR 11110 (01) |
| | ) | |
| CHARLES GRIFFIN, | ) | |
| | ) | Honorable Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding |

MODIFIED UPON REHEARING

JUSTICE MURPHY delivered the opinion of the court:

Defendant, Charles Griffin, was convicted of three counts of first degree murder based on an accountability theory (720 ILCS 5/9-1(a)(3), 5-2 (West 2004)) for the August 2001 shooting deaths of Khristian Bracy, Terrell Hall, and Nadia James. Griffin was sentenced to natural life imprisonment on each count, with all counts running concurrently. On appeal, Griffin argues that: (1) the trial court's response to a jury question improperly applied the law to the facts and essentially directed a guilty verdict; (2) the prosecutor made improper statements in rebuttal closing argument suggesting that the court had already determined the reliability of Griffin's statements; and (3) his sentence of life imprisonment is constitutionally disproportionate because he was a passive participant and was only 17 years old at the time of the crimes.

For the reasons stated below, we affirm.

I.  BACKGROUND

A.  Griffin's First Confession

On February 27, 2002, Griffin was in the custody of Chicago police on an unrelated matter when he gave a statement relating to a robbery and triple homicide.  Chicago police detective Karen Morrissette testified at trial that Griffin told her that a man named Shabaz had approached Griffin to see if he wanted to do a "lick," which he understood to mean a robbery, at a "dope house."  Griffin told Shabaz he would, but he already had plans to take his girlfriend to a movie that day.  They planned to perform the robbery the following week.

The next week, Shabaz approached Griffin and asked whether he was ready to do the "lick."  Griffin said that he was ready and waited until Shabaz returned in a brown Chrysler.  Griffin told Shabaz that he would drive the car.  Griffin followed Shabaz's directions to pick up Little Chris, Shabaz's cousin.  They continued to the alley of 113th Street and South Church Street, where Shabaz directed him to park in the alley and wait.

Shabaz and Little Chris left the car and walked to the front of South Church Street until they were out of sight.  They were gone about 15 minutes, and during that time, Griffin heard five or six gunshots.  Shortly after Griffin heard the gunshots, Shabaz returned to the car with a .357 revolver in one hand and a bag of marijuana in the other.  Shabaz and Little Chris got into the backseat of the car, and Shabaz ordered him to drive away.  Little Chris asked Shabaz why he shot the man and woman in the house.  Shabaz responded that he knew them.  Shabaz was upset that Little Chris did not grab the container holding drugs from the house, since it was the reason they went there.

2

Griffin drove back to the area of West 63rd Street and South Bishop Street. He saw Shabaz two or three days later. Shabaz asked why Griffin did not come by his house to obtain his share of the proceeds from the robbery, and Griffin responded that he did not want it.

B. Griffin's Second Confession

Assistant State's Attorney Lisette Mojica testified that she spoke with Griffin at 2:45 a.m. on February 28, 2002, after detectives advised that Griffin was in their custody. After they discussed the triple homicide, Mojica gave Griffin four options for memorializing his statement: (1) an oral statement that Mojica would later write down but that Griffin could not review; (2) a handwritten statement that Mojica would write down and Griffin could correct and sign; (3) a statement transcribed by a court reporter; or (4) a videotaped statement. After a three-hour nap, Griffin decided on a statement that Mojica would transcribe and Griffin would sign. Mojica testified that after she wrote the statement, she and Griffin went through it line by line, and Griffin made corrections. Griffin signed the bottom of each page after the entire statement had been read to him.

Griffin's second statement was substantially similar to his statement to detectives. According to this statement, when Shabaz initially approached Griffin about doing a robbery, Griffin and Shabaz agreed that Shabaz's cousin, Little Chris, would go inside the house with Shabaz and that they would steal money, marijuana, and cocaine. Griffin and Shabaz agreed that Griffin would be the driver to and from the robbery. Griffin would also look out for police while Shabaz went inside 11346 South Church Street. They also agreed that Griffin would get a share of what was stolen during the robbery. Griffin knew that Shabaz planned to use a gun because

1-04-2580

Shabaz told him he was getting the gun.

The second statement also specifies that on August 18, 2001, Shabaz picked Griffin up in a brown Chrysler and asked if he was ready to go. Griffin got into the driver's seat and went to pick up Little Chris. When they arrived, Griffin drove past the front of 11346 South Church Street. Shabaz told Griffin to wait in the back until he and Little Chris returned. Griffin pulled in the alley behind the house, turned off the lights, and kept the car in park with the engine running. When Shabaz and Chris left the car, Griffin saw that Shabaz had a chrome-colored .357 revolver.

Griffin waited in the car for 10 to 15 minutes while he kept a lookout for police or anyone else who might come down the alley during the robbery. Griffin did not see any police while he waited, but if he had, he would have left. While he was waiting, Griffin heard about four gunshots one minute before Shabaz and Little Chris returned to the car.

At West 63rd Street and Bishop Street, as Griffin was getting out of the car, Shabaz told him to meet him at his sister's. Griffin did not go, and three days later he saw Shabaz, who asked why Griffin never went to his sister's house to get his share of the robbery proceeds.

## C. Verdict and Sentence

No witnesses controverted the testimony of Morrissette and Mojica, and at trial, Griffin did not present any evidence. On June 4, 2004, a jury returned a verdict of guilty of first degree murder of all three victims. On August 2, 2004, Griffin was sentenced to natural life, concurrent on the three counts.

## II. ANALYSIS

4

1-04-2580

## A. Trial Court's Response to Jury Question

Griffin first argues that he was denied his constitutional right to an impartial jury and fair trial when the trial judge improperly applied the law to the facts of the case and essentially directed the jury to find defendant guilty on all three counts of murder. During deliberations, the jury sent out a note asking, "Is the defendant 'legally responsible' of felony murder if he didn't know about the weapon until directly after the murders?" The trial court responded, "The defendant could be found guilty of felony murder based upon residential burglary even if he did not know about the weapon until directly after the murder."

To preserve a question for appellate review, both a trial objection and a written posttrial motion raising the issue are required. *People v. Pinkney*, 322 Ill. App. 3d 707, 715 (2000). A general contention in a motion for a new trial that the trial court erred in giving and refusing instructions is not sufficient to inform the court of its error. *Pinkney*, 322 Ill. App. 3d at 715. Griffin's suggestion to the trial court that it respond to the jury's first question by instructing it to continue deliberations is a "reasonable indication of an objection" necessary to preserve an error. *People v. Pankey*, 58 Ill. App. 3d 924, 926 (1978). However, Griffin's general contention in his motion for new trial that the trial court erred in giving instructions on behalf of the State and over defendant's objection was insufficient to inform the court of its alleged error. See *Pinkney*, 322 Ill. App. 3d at 715. Griffin also failed to dispute the court's conclusion that the first jury question presented an issue of law.

However, the right to a fair trial by an impartial jury is considered to be so basic as to warrant application of the plain error rule. *People v. Gregory*, 184 Ill. App. 3d 676, 680 (1989).

5

Because Griffin argues that the trial court's response to the jury's first question denied him of his right to an impartial jury and a fair trial, we will review for plain error, despite waiver of this issue.

A judge has wide discretion in deciding whether to respond to a jury question. *People v. Boose*, 256 Ill. App. 3d 598, 604 (1994). However, a trial court has a duty to provide instructions when the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is confusion. *People v. Pulliam*, 176 Ill. 2d 261, 285 (1997). The trial court must refuse to answer a question presented by the jury if an answer would express the court's opinion on the evidence or would probably direct a verdict. *People v. Gray*, 346 Ill. App. 3d 989, 993 (2004).

The trial court's response to the jury question was a direct answer to the question posed. The court simply related the law of felony murder, residential burglary, and accountability. Being armed with a firearm is not an element of residential burglary (see 720 ILCS 5/19-3 (West 2004)), so under a legal accountability theory (720 ILCS 5/5-2(c) (West 2004)), a defendant can be found guilty of felony murder based on residential burglary even if he or she did not know about the weapon before the commission of the crime. See *People v. Klebanowski*, 221 Ill. 2d 538 (2006).

Furthermore, the trial court did not apply that law to the evidence or instruct the jury on how to do so. See *People v. Curtis*, 354 Ill. App. 3d 312, 322 (2004). It remained the jury's task to apply that law to the evidence and to determine Griffin's guilt. *Gray*, 346 Ill. App. 3d at 993. We reject Griffin's argument that the trial court improperly concluded that he *was* guilty under

the factual scenario presented by the jury's note or that the law "required" guilty findings irrespective of whether Griffin was aware of the gun. The trial court said that Griffin "could," a word that suggests the conditional or a possibility, be found legally responsible, not that he "should" or "must," words that suggest a directive or mandate.

Griffin does not dispute that this statement of law is correct. Instead, he claims that the trial court's response undermined his contention throughout closing argument that Shabaz forced him to participate in the crimes. First, there was no evidence presented at trial to support Griffin's argument that he was forced to participate. Griffin's own confession supports the conclusion that he willingly acted as a lookout and getaway driver. Second, the trial court's statement of law would still apply even if Shabaz had in fact forced Griffin. Because the trial court stated that Griffin "could" be found guilty, its response left the question of whether Shabaz forced Griffin to be determined by the jury. Furthermore, the court's response did not imply that the State was not required to prove all of the elements of residential burglary, felony murder, and accountability beyond a reasonable doubt.

We find Griffin's cited cases, *People v. Tomes*, 284 Ill. App. 3d 514 (1996), *People v. Dennis*, 181 Ill. 2d 87 (1998), and *People v. Banks*, 281 Ill. App. 3d 417 (1996), distinguishable. In *Banks*, the defendant was convicted of criminal trespass to residence. *Banks*, 281 Ill. App. 3d at 421. The father of the defendant's 17-year-old friend testified that he told the defendant that he was not allowed in the house unless invited by a parent, but the defendant testified that the daughter gave him permission to enter the home. During jury deliberations, the jury sent out a question asking whether the 17-year-old, a minor, had the authority to give permission to enter

7

her parents' home. The trial court responded that, as a matter of law, authorization for the defendant to enter the house that day could only come from the parents. This response decided a crucial fact for the jury and had the effect of directing a verdict of guilty because the only question before the jury was whether the entry was authorized. *Banks*, 281 Ill. App. 3d at 422. Unlike in *Banks*, where the judge assumed the father's version of events was true when it answered the jury's question, the trial court here did not assume either the State's or Griffin's version of events as true. Instead, the court left the factual issues for the jury to decide.

In *Tomes*, the defendant was charged with attempted first degree murder and aggravated discharge of a firearm. *Tomes*, 284 Ill. App. 3d at 516. During deliberations, the jurors sent a note to the judge stating they had reached a verdict on the aggravated discharge of a firearm but that they were split on the other charge. They asked if the charge of aggravated discharge of a firearm could "stand on itself." The trial court's response was to "continue to deliberate on the charge of attempt first degree murder," and the jury found the defendant guilty of both counts. The judge's response had the effect of directing a verdict of guilty as to attempted murder because the jury was instructed not only to continue its deliberation, but to deliberate on the charge of attempted murder. *Tomes*, 284 Ill. App. 3d at 519. Unlike in *Tomes*, the trial court did not direct the jury to do anything when it responded to its question. In addition, in *Tomes*, the implications available to the jury as a result of the judge's response were that: (1) the verdict of guilty of aggravated discharge of a firearm could not "stand on itself," and (2) the jurors should resolve their indecision on the attempted murder charge against the defendant. Here, the only implication that the jurors were left with was that they *could* find Griffin guilty of felony murder

8

based on residential burglary even if he did not know about the gun before the crimes.

Finally, in *Dennis*, the defendant was charged with armed robbery on a theory of accountability. *Dennis*, 181 Ill. 2d at 89. In responding to a jury question concerning when the armed robbery had ended, the court responded that "you may consider the period of time and activities involved in escaping to a place of safety." *Dennis*, 181 Ill. 2d at 106. The court's response had the effect of expanding the offense of armed robbery because the rule articulated by the court applied to felony murder and was inapplicable for accountability purposes. *Dennis*, 181 Ill. 2d at 107. *Dennis* is inapposite because Griffin does not dispute that the trial court gave a correct statement of the law in its response.

For the reasons stated above, we find that the trial court did not abuse its discretion.

### B. Prosecutor's Comments in Closing Argument

Griffin contends that two comments made by the prosecutor during closing arguments denied him a fair trial. During rebuttal, the prosecutor said that Griffin's handwritten statement, as memorialized by Mojica, "is evidence because it's admitted by Court because it's reliable because you should consider it." The prosecutor said later in his closing argument, "You wouldn't get this if it was improper." As a preliminary matter, although Griffin argues that the prosecutor's comments suggested that Griffin's "statements" were proper, the prosecution was referring only to the statement that was memorialized by Mojica ("This statement, nine pages***"), not the separate oral confession that Detective Morrissette described.

As explained above, to preserve a question for appellate review, both a trial objection and a written posttrial motion raising the issue are required. *Pinkney*, 322 Ill. App. 3d at 715.

9

Although in his motion for new trial Griffin referred generally to "prejudicial inflammatory and erroneous statements" in the prosecution's closing arguments, he did not make a contemporaneous objection during the closing argument. Accordingly, Griffin waived this argument.

Griffin claims that we should address his argument under the fundamental rights prong of the plain error test. 134 Ill. 2d R. 615(a). Nonpreserved errors may be reviewed on appeal if the evidence is closely balanced or where the errors are of such a magnitude that the defendant was denied a fair and impartial trial. *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000).

A reviewing court will not reverse a jury's verdict based on improper remarks made during closing arguments unless the comments resulted in substantial prejudice to the defendant and constituted a material factor in his conviction. *People v. Alvine*, 173 Ill. 2d 273 (1996). It is well settled that prosecutors enjoy wide latitude in closing arguments, and the scope of permissible arguments rests within the sound discretion of the trial court. *People v. Walker*, 262 Ill. App. 3d 796, 804 (1994).

We do not find that the alleged errors are of such a magnitude that Griffin was denied a fair and impartial trial. Indeed, one reasonable interpretation of the prosecution's reliability comment is that he was drawing an inference on the court's reason for admitting the statement, *i.e.*, that it was reliable. It does not necessarily follow that the court found that the statement was reliable. In addition, when the second comment ("You wouldn't get this if it was improper") is placed in context, it is clear that the prosecutor was not suggesting that the trial court already deemed the statement proper. Instead, the prosecutor explained the reason Mojica handwrote the

10

statement herself: if it was illegible or did not comply with *Miranda* rules, it would not reach the jury.

Furthermore, comments made in closing argument must be considered in context by examining the entire closing arguments of both the State and the defendant. *People v. Kliner*, 185 Ill. 2d 81, 154 (1998). The State may respond to comments by defense counsel that clearly invite a response. *Kliner*, 185 Ill. 2d at 154. Reviewed in context, the prosecutor's rebuttal argument that the handwritten statement "is evidence because it's admitted by Court because it's reliable because you should consider it" responded to several of defense counsel's remarks, including that the assistant State's Attorney wrote the statement so she could ensure that the facts matched the elements of felony murder and that she manufactured the statement about Griffin seeing a gun. Griffin's suggestion that the assistant State's Attorney and the detective were dishonest in relation to Griffin's confessions invited the prosecutor's response.

Even if there were an error, however, it would be harmless because the jury was instructed that closing arguments should be confined to the evidence and reasonable inferences to be drawn therefrom and that closing arguments are not evidence. *People v. Walker*, 230 Ill. App. 3d 377, 399 (1992). Instructions of this sort decrease the likelihood that improper remarks in the prosecutor's closing argument rose to the level of plain error. *People v. Bratton*, 178 Ill. App. 3d 718, 726 (1989).

Furthermore, an additional instruction clarified the jury's role in assessing both of Griffin's confessions: "You have evidence that the defendant made statements relating to the offenses charged in the indictment. It is for you to determine what weight should be given to the

11

statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

*People v. Monroe*, 95 Ill. App. 3d 807 (1981), which Griffin relies on in support of his argument that the prosecutor's comments improperly suggested that the judge already determined his statements to be reliable, is distinguishable. In *Monroe*, the defendant introduced evidence that police might have hit him during questioning and that police failed to follow procedures for questioning juveniles. In closing arguments, defense counsel used this evidence to raise doubts as to whether the defendant's confession was made or was credible. In rebuttal, the prosecution argued that if there had been a violation, "something would have been done about it." The prosecutor further argued that "[i]t is not your duty to be concerned about any legal violations that may or may not have occurred" and that if the defendant's rights had been violated, the judge would have "taken care of" them. On appeal, the court found that the prosecutor unfairly and incorrectly implied that the jury should not concern themselves with the manner in which the confession was obtained. *Monroe*, 95 Ill. App. 3d at 816.

Contrary to Griffin's argument, *Monroe* is inapplicable. In *Monroe*, the prosecutor said outright that it was not the jury's duty to evaluate legal violations and that if any had occurred, the judge would have taken care of them. Furthermore, the prosecutor made one of these statements at least four times, and defense counsel objected every time. Here, the prosecutor said once that the written statement "is evidence because it's admitted by Court because it's reliable because you should consider it." As explained above, this one unobjected-to comment does not necessarily suggest that the court already determined the statement's reliability. Even if

12

it did, however, it would only constitute an implication and not the numerous outright statements that were found erroneous in *Monroe*.

*People v. Mulero*, 176 Ill. 2d 444 (1997), which Griffin cites in his motion to cite additional authority, is also inapplicable. In *Mulero*, the court found prejudicial a prosecutor's argument that the defendant pled guilty only because her pretrial motion to suppress her confession was unsuccessful. Here, the prosecutor's comments did not suggest a purported pretrial motion to suppress. Furthermore, in *Mulero*, the defendant actually exercised her constitutional right to remain silent, unlike Griffin, who did not exercise that right.

Accordingly, we find no error in the prosecutor's comments in closing. Nor do we find that the evidence was so "closely balanced" as to invoke the second prong of the plain error rule. Griffin gave two confessions, and the one made to Detective Morrissette was not even implicated in the two comments in question. Furthermore, while Griffin asserted in closing argument that Shabaz forced him into the crime scheme, no evidence adduced at trial supported that argument.

In addition, because we find that the prosecutor's comments were not improper, we reject Griffin's argument that these instances of alleged prosecutorial misconduct are evidence of ineffective assistance of counsel.

C. Mandatory Application of Life Sentence

Finally, Griffin argues that the multiple-murder sentencing statute, section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2004)), which requires the imposition of the sentence of life imprisonment without discretion or consideration of other

13

mitigating factors, violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11). Griffin claims that the sentence is disproportionate as applied to him because he was 17 years old at the time of the offense, did not intend the murders, and was a passive participant in the scheme.

Whether a statute is constitutional is a question of law that the appellate court reviews *de novo*. *People v. Jackson*, 358 Ill. App. 3d 927, 933 (2005).

Statutes are presumed to be constitutional, and the party challenging the statute bears the burden of proving its invalidity. *People v. LaPointe*, 88 Ill. 2d 482 (1981). Moreover, the legislature has discretion to prescribe penalties for described offenses. *People v. Taylor*, 102 Ill. 2d 201, 208 (1984). This discretion necessarily includes the power to prescribe mandatory sentences, even if the mandatory sentences restrict the judiciary's discretion in imposing sentences. *People v. Davis*, 177 Ill. 2d 495, 501 (1997).

Griffin relies upon *People v. Miller*, 202 Ill. 2d 328 (2002), in support of his contention that section 5-8-1 is unconstitutional as applied to him. In *Miller*, the 15-year-old defendant was charged with two counts of first degree murder based on accountability and transferred to be prosecuted as an adult. He was convicted of both counts and sentenced to 50 years' imprisonment after the trial court found that section 5-8-1 was unconstitutional as applied to him. The Illinois Supreme Court agreed and held that the convergence of the accountability statute, the transfer statute, and section 5-8-1 eliminated the trial court's ability to consider mitigating factors, such as the defendant's age or level of culpability. *Miller*, 202 Ill. 2d at 341. The court found that this was particularly harsh and unconstitutionally disproportionate as

14

applied to the 15-year-old defendant, who only had a minute to contemplate his decision to participate in the incident and stand as a lookout. *Miller*, 202 Ill. 2d at 341.

The narrow rule articulated in *Miller* does not apply to Griffin. First, *Miller* limited its holding to juvenile defendants. Griffin, at 17 years old, was not a juvenile at the time, so the juvenile transfer statute, one of the three statutes that "converged" in *Miller*, does not apply. Although Griffin relies on the involvement of a third statute, the felony murder provision of the first degree murder statute, the key to the juvenile transfer statute in *Miller* was the "long-standing distinction made in this state between adult and juvenile offenders." *Miller*, 202 Ill. 2d at 341. See *People v. McCoy*, 337 Ill. App. 3d 518, 525 (2003) (holding that *Miller* does not apply to a 19-year-old defendant convicted of murder based on a theory of accountability). Moreover, the *Miller* court noted that Illinois courts have upheld the application of the statute "to juvenile principals and *adult* accomplices." (Emphasis added) *Miller*, 202 Ill. 2d at 337. Griffin acknowledges that at the time of the crime, he was an adult for criminal justice purposes. While *Roper v. Simmons*, 543 U.S. 551, 161 L. Ed. 2d 1, 125 S. Ct. 1183 (2005), acknowledges a greater rehabilitative potential for youthful offenders, it applies to the imposition, not of a life sentence, but of the death penalty, for offenders who are under 18 at the time of the offense.

In addition, the evidence shows that Griffin and Shabaz agreed that Shabaz and Little Chris would go inside the house and that the two would steal money, marijuana, and cocaine from the people who lived there. This level of participation is a far cry from the "passively accountable" defendant in *Miller*. There, the defendant had no role in the planning of the crime and had no apparent knowledge of what crime was to take place. Furthermore, the defendant in

15

*Miller* had a minute to contemplate his decision until the shooting occurred and ran after he heard the shots. Griffin, on the other hand, had a full week to contemplate whether to act as the lookout and getaway driver for the robbery. He also sat in the car, with the engine running, for 10 to 15 minutes as he watched out for police and waited for Shabaz and Little Chris to complete the robbery and return. He continued to wait even after he heard gunshots and then drove the two from the crime scene. Therefore, we reject Griffin's argument that he was only a "passive participant" in the scheme. Contrary to Griffin's argument, we also decline to speculate based on the jury's questions that they "apparently credited" his claim that he was unaware that Shabaz planned to enter the house while armed with a gun.

In *People v. Winters*, 349 Ill. App. 3d 747 (2004), the defendant, who was 18 at the time of the crime, was convicted of two counts of first degree murder under a theory of accountability and sentenced to life imprisonment. The *Winters* defendant, like Griffin, claimed that section 5-8-1 was unconstitutional as applied to him under *Miller* because he was a "young" adult offender who played a passive role in the crime. The court, however, rejected the defendant's claim and held that *Miller* did not apply because the 18-year-old defendant was not a juvenile. *Winters*, 349 Ill. App. 3d at 750. In addition, *Winters* noted that courts upholding section 5-8-1 against constitutional challenges under a theory of accountability have held that an adult defendant's degree of participation is irrelevant, regardless of whether the defendant is the perpetrator or the accomplice. *Winters*, 349 Ill. App. 3d at 751. Similarly, an accomplice's degree of participation is irrelevant whether he is an active or passive participant. *Winters*, 349 Ill. App. 3d at 751. Therefore, even if Griffin had been a "passive participant" in the crime, it would be irrelevant.

16

### III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

QUINN P.J., and GREIMAN, J., concur.