2024 IL App (1st) 221179-U

No. 1-22-1179

Third Division
November 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| | ) | No. 91 CR 23697 |
| v. | ) ) | The Honorable |
| ELLEAN NANCE, | ) ) | Kenneth J. Wadas, Judge Presiding. |
| Defendant-Appellant. | ) ) ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court's denial of defendant's motion for leave to file a fourth successive postconviction petition is affirmed, where defendant failed to demonstrate cause for relaxing the bar against successive petitions.

¶ 2    After a jury trial, 19-year-old defendant Ellean Nance was convicted of first-degree murder, two counts of attempted first-degree murder, and aggravated discharge of a firearm, and was sentenced to a natural life prison term for the first-degree murder and 30 years for the attempted murders. The instant appeal arises from the denial of defendant's motion for leave to file a fourth successive postconviction petition pursuant to the Post-Conviction Hearing Act

(Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), challenging his sentence. Defendant contends that the circuit court erred in denying him leave to file his petition, where he established both cause and prejudice for his claim that his life sentence violated the proportionate penalties clause of the Illinois Constitution. For the reasons set forth below, we affirm.

¶ 3                                    BACKGROUND

¶ 4        The instant appeal represents the seventh time this case has been before us, as we have previously affirmed defendant's conviction on direct appeal (*People v. Guye*, Nos. 1-94-4028, 1-94-4182 (cons.) (1996) (unpublished order under Illinois Supreme Court Rule 23)), the dismissal of his postconviction petition (*People v. Nance*, No. 1-97-3314 (1998) (unpublished order under Illinois Supreme Court Rule 23)), the denials of motions for leave to file successive postconviction petitions (*People v. Nance*, No. 1-98-3395 (1999) (unpublished order under Illinois Supreme Court Rule 23); *People v. Nance*, No. 1-00-2947 (2002) (unpublished order under Illinois Supreme Court Rule 23); *People v. Nance*, 2018 IL App (1st) 150834-U), and the denials of petitions for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)) (*People v. Nance*, Nos. 1-09-0363, 1-09-0943 (cons.) (2010) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 5        As set forth in our prior decisions, the facts of this case are well established. Following separate but joint and simultaneous jury trials, defendant and codefendant Lorenzo Guye were convicted of first-degree murder, attempted first-degree murder, and aggravated discharge of a firearm for an August 15, 1991, shooting incident which resulted in the murder of Chicago Housing Authority (CHA) officer Jimmie Hayes and the attempted murders of CHA officers Silas Noble and Sharlene House. The evidence at trial established that defendant and Guye were members of the Gangster Disciples street gang, which was "at war" with a rival gang

over control of public housing buildings located in the area of 4500 South Federal Street. The Gangster Disciples believed that the CHA officers were aligned with the other gang and, as such, Guye indicated that he wished to kill one of the officers. On the evening of August 15, 1991, defendant and Guye fired multiple gunshots towards one of the buildings, and Hayes was killed as a result. As defendant did not fire the shot which killed Hayes, his murder conviction was based on an accountability theory, and the trial court ultimately sentenced him to natural life in prison for the murder and 30 years for the attempted murders, with all sentences to run concurrently.

¶ 6 As part of the sentencing hearing, the trial court considered evidence in aggravation and mitigation, as well as defendant's presentence investigation report (PSI). In aggravation, the State presented the testimony of a correctional officer who testified that, while in jail, defendant and fellow inmates set a fire to lure two guards into a cell. At the time of the occurrence, defendant was in the segregation division for refusing to obey orders by staff and using disrespectful language. Once the guards entered the cell, defendant punched one in the head multiple times, while his cellmate struck the other. By contrast, in mitigation, defendant presented the testimony of several family members, who testified to his good character, his intelligence, and his loving family, including testimony that he was a high school graduate who had obtained employment working at the post office.

¶ 7 Defendant's PSI indicated that he graduated from DuSable High School in 1990, and had been employed at the post office as a mail sorter. According to defendant, he "ha[d] a good relationship with his family," was "in good mental and physical health," and "does not drink or [use] drugs."

¶ 8        After considering the parties' arguments and the evidence, the trial court found that "[o]nly the severest form of penalty can express the outrage of society." The trial court noted that defendant had "some rehabilitative potential," as he was intelligent and had people in his life who loved him, but that his conduct while in custody was "outrageous." The trial court further found that "[t]he limited rehabilitative potential is far outweighed by the seriousness of the offense." The trial court accordingly sentenced defendant to natural life without parole for the murder and 30 years for the attempted murders, with the sentences to run concurrently.

¶ 9        On direct appeal, defendant and his codefendant both contended that they were not proven guilty beyond a reasonable doubt. We affirmed defendant's conviction (*Guye*, Nos. 1-94-4028, 1-94-4182 (cons.)), and the supreme court denied his petition for leave to appeal (*People v. Guye*, 168 Ill. 2d 608 (1996) (table)).

¶ 10       Over the years following his conviction in 1994, defendant filed several collateral challenges to his conviction and sentence. In 1997, defendant filed a postconviction petition based on (1) newly discovered eyewitness statements supporting a claim of actual innocence, (2) ineffective assistance of both trial and appellate counsel, and (3) insufficient evidence supporting his conviction. Defendant's petition was summarily dismissed by the circuit court. We affirmed the dismissal after permitting the public defender to withdraw as appellate counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) (*Nance*, No. 1-97-3314), and the supreme court denied his petition for leave to appeal (*People v. Nance*, 182 Ill. 2d 564 (1999) (table)).

¶ 11       In 1998, defendant filed a motion for leave to file a successive postconviction petition, based on similar claims as in his initial postconviction petition, which was denied by the circuit court. We affirmed the denial of defendant's motion after permitting the public defender to

withdraw pursuant to *Finley* (*Nance*, No. 1-98-3395), and the supreme court denied his petition for leave to appeal (*People v. Nance*, 186 Ill. 2d 583 (1999) (table)).

¶ 12    In 2000, defendant filed a section 2-1401 petition for postjudgment relief and, while that petition was pending, another motion for leave to file a successive postconviction petition. Both were based on similar allegations and were denied by the circuit court in a consolidated order. We affirmed the denials on appeal (*Nance*, No. 1-00-2947), and the supreme court denied his petition for leave to appeal (*People v. Nance*, 205 Ill. 2d 624 (2003) (table)).

¶ 13    In 2007, defendant filed a second section 2-1401 petition, challenging his conviction and sentence as void, which was denied. Defendant filed a third section 2-1401 petition in 2009, again challenging his sentence as void, which was similarly denied. We affirmed the denial of both petitions on appeal (*Nance*, Nos. 1-09-0363, 1-09-0943 (cons.)).

¶ 14    In 2014, defendant filed a motion for leave to file his third successive postconviction petition based on his claim that his statement to police was coerced, which was denied. We affirmed the denial on appeal (*Nance*, 2018 IL App (1st) 150934-U), and the supreme court denied his petition for leave to appeal (*People v. Nance*, No. 124021 (Nov. 28, 2018)).

¶ 15    On September 15, 2020, defendant filed a motion for leave to file a fourth successive postconviction petition (the petition at issue in the case at bar), claiming that his "mandatory"[1] life sentence without the possibility of parole violated the eighth amendment to the United States Constitution, as well as the proportionate penalties clause of the Illinois Constitution, where the sentencing scheme precluded the trial court from considering defendant's

[1] On appeal, defendant acknowledges that his sentence was a discretionary, not mandatory, life sentence. While the murder of a peace officer currently results in a mandatory life sentence (see 730 ILCS 5/5-8-1(d)(iii) (West 2022)), the law at the time of defendant's conviction provided for a discretionary life sentence under the same circumstances (see Ill. Rev. Stat. 1989, ch. 38, ¶¶ 9-1(b)(1), 1005-8-1(1)).

rehabilitative potential, age, and level of culpability. Specifically, defendant's claims were based on the line of cases resulting from the United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that the eighth amendment prohibited mandatory life sentences for juveniles. Defendant contended that, in light of his age at the time of the offense—two weeks shy of his twentieth birthday—as well as evolving science on brain development and the fact that his conviction was based on an accountability theory, his life sentence was unconstitutional under both the United States and Illinois Constitutions.

¶ 16    In support of his arguments that his development was similar to that of a juvenile, defendant pointed to affidavits from himself and his siblings, in which they averred that their experiences growing up included drugs, gangs and gang violence, shootings, and generally "encountering experiences growing up in an urban war zone." Defendant also attached several articles concerning brain development in juveniles.

¶ 17    Defendant subsequently sought to supplement his motion with an additional report prepared by Dr. James Garbarino, a developmental psychologist, which the circuit court granted. In his report, Dr. Garbarino analyzed defendant's childhood development to conclude that defendant should fall under the *Miller* framework despite being over 18 years of age at the time of the offense. With respect to defendant's specific characteristics and experiences, Dr. Garbarino focused heavily on defendant's reports of his childhood, namely, reports of drug use and physical and emotional abuse by adults in defendant's life and his experiences living in a high-violence neighborhood in which gangs were active. Dr. Garbarino further applied an approach to risk accumulation which centered on the impact of 10 " 'Adverse Childhood Experiences,' " an approach which was endorsed by the federal Centers for Disease Control. Using this approach, Dr. Garbarino found that defendant scored a seven, which was "worse

than 99 out of 100 Americans growing up" but was not uncommon in defendants involved in murder cases. The adversities reported by defendant included being physically, emotionally, and sexually abused; physical neglect; parental separation; living with a substance abuser; and living in a household with mental health problems. Dr. Garbarino further opined that, in the 30 years since the crime, defendant had matured into being a "positive adult," including his educational endeavors, involvement in pro-social programs, and positive orientation to life, which demonstrated that defendant was not incorrigible.

¶ 18       On July 1, 2022, the circuit court denied defendant's motion for leave to file his fourth successive postconviction petition. With respect to defendant's challenge under the eighth amendment, the circuit court noted that the United States Supreme Court had drawn a clear line at age 18 for such challenges and, as defendant was over age 18, his *Miller* claim was meritless and he therefore could not establish prejudice. With respect to defendant's challenge under the proportionate penalties clause, the circuit court observed that Dr. Garbarino's report included factual allegations about defendant's challenging childhood which were contradicted by defendant's PSI at the time of his sentencing, as the PSI indicated that defendant completed high school, was gainfully employed by the post office at the time of the offense, and reported a " 'good relationship with his family.' " The circuit court further noted that the mitigation evidence presented by defendant at his sentencing hearing also indicated that defendant "came from a caring, loving family and had success in both school and work."

¶ 19       The circuit court further examined the "attendant characteristics to youth" which the Illinois Supreme Court had instructed must be considered prior to sentencing juveniles to life sentences, and concluded that the trial court had conducted a *Miller*-compliant sentencing

hearing.[2] After examining the evidence presented to the trial court at the sentencing hearing, the circuit court found that defendant "was sentenced after the court had comprehensively considered his youth and its attendant circumstances." The circuit court accordingly found that defendant was unable to demonstrate prejudice where his proportionate penalties claim failed as a matter of law.

¶ 20     This appeal follows.

¶ 21                                   ANALYSIS

¶ 22     On appeal, defendant contends that the circuit court erred in denying him leave to file a fourth successive postconviction petition, as his natural life sentence violates the proportionate penalties clause of the Illinois Constitution. The Act generally contemplates the filing of only one postconviction petition. *People v. Clark*, 2023 IL 127273, ¶ 39; 725 ILCS 5/122-1(f) (West 2020)). As the filing of successive postconviction petitions is "highly disfavored," a defendant may file a successive petition only under certain circumstances, and must obtain leave of court to do so. (Internal quotation marks and citations omitted.) *Clark*, 2023 IL 127273, ¶ 39. Our supreme court has identified two bases upon which the bar against successive proceedings will be relaxed: (1) where a defendant can establish "cause and prejudice" for failing to raise the claim in an earlier petition (see *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)), and (2) where a defendant can establish actual innocence (see *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009)). See also *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23 (identifying two bases for relaxing ban against successive pleadings).

---

[2] The judge ruling on defendant's motion was not the same judge who had previously presided over defendant's trial and sentencing.

¶ 23    As relevant to the instant appeal, the cause-and-prejudice test has been codified by the legislature in section 122-1(f) of the Act. Under this test, a defendant establishes "cause" by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). A defendant establishes "prejudice" by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Both elements of the test must be satisfied in order to overcome the bar against successive proceedings. *Clark*, 2023 IL 127273, ¶ 47. Accordingly, if a defendant is unable to establish cause, there is no need to discuss whether the prejudice element is satisfied. See *People v. Moore*, 2023 IL 126461, ¶ 42. A circuit court makes a cause-and-prejudice determination by conducting a preliminary screening of the defendant's motion to assess whether the motion adequately alleges facts making a *prima facie* showing of cause and prejudice, and we review the circuit court's decision *de novo*. *Clark*, 2023 IL 127273, ¶ 47.

¶ 24    In this case, defendant contends that he satisfied the cause-and-prejudice test by demonstrating that his natural life sentence violates the proportionate penalties clause of the Illinois Constitution. The proportionate penalties clause of the Illinois Constitution requires that all penalties "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Among other circumstances, a defendant's sentence violates the proportionate penalties clause where "the penalty imposed is 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Clark*, 2023 IL 127273, ¶ 51 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)). There is no specific definition of a "cruel"

or "degrading" sentence, as the "moral sense" of the community changes over time, in light of evolving standards of decency and fairness. *Id.*

¶ 25    In recent years, both the United States and the Illinois Supreme Courts have addressed the issue of juvenile sentencing in connection with the eighth amendment's prohibition against cruel and unusual punishment. Specifically, in *Miller*, 567 U.S. at 489, the United States Supreme Court held that the eighth amendment prohibits the mandatory sentencing of a juvenile to life in prison without parole and instead requires sentencing courts to have discretion in sentencing juveniles, after considering the juvenile's youth and the attendant characteristics of youth.[3] See *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307, 1316 (2021) (interpreting *Miller*). The Supreme Court, however, has "clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18." *People v. Harris*, 2018 IL 121932, ¶ 58 (discussing United States Supreme Court precedent). Furthermore, the protections of *Miller* apply only to mandatory life sentences, not to discretionary sentences. *Clark*, 2023 IL 127273, ¶¶ 71-72. As defendant in the instant case was over the age of 18 and received a discretionary life sentence, defendant has appropriately abandoned his eighth-amendment claim on appeal.

¶ 26    The proportionate penalties clause, however, is broader than the protections of the eighth amendment (see *People v. Clemons*, 2012 IL 107821, ¶¶ 39-40), and our supreme court consequently has not foreclosed the possibility of "emerging adults" of 18 or 19 years old raising challenges to their sentences under the proportionate penalties clause based on a *Miller*-type analysis. See, *e.g.*, *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44; *People v. Harris*,

---

[3] Our supreme court has expanded the holding in *Miller* to include *de facto* life sentences, which it has identified as sentences of more than 40 years. See *People v. Buffer*, 2019 IL 122327, ¶¶ 27, 40.

2018 IL 121932, ¶¶ 1, 48; *People v. House*, 2021 IL 125124, ¶¶ 29-32. It is this line of case law on which defendant relies in his current appeal. Those cases, however, concern "*mandatory* life sentences in *initial* postconviction petitions." (Emphases in original.) *Clark*, 2023 IL 127273, ¶ 88. Our supreme court has indicated that they are not applicable to challenges to *discretionary* life sentences in *successive* postconviction petitions. See *id.*; *People v. Hilliard*, 2023 IL 128186, ¶¶ 27-28.

¶ 27        Moreover, our supreme court has expressly found that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause," as Illinois courts have long recognized the distinction between minors and adults for purposes of sentencing. *People v. Dorsey*, 2021 IL 123010, ¶ 74. While defendant contends that his case is different, as he was an "emerging adult," not a minor, we find this argument unpersuasive. In *Clark*, the supreme court applied *Dorsey* to find that the defendant could not establish cause with respect to his proportionate penalties claim, despite the fact that the defendant was 24 years old. See *Clark*, 2023 IL 127273, ¶ 93. Specifically, the supreme court found that "the same reasoning applies" as in *Dorsey*, as Illinois courts "were also aware that less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development." (Internal quotation marks omitted.) *Id.* See also *Moore*, 2023 IL 126461, ¶ 40 ("As *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause.").

¶ 28        In *Clark*, the supreme court cited to *People v. Haines*, 2021 IL App (4th) 190612, in which the Fourth District discussed the proportionate penalties clause in relation to young adults and found that Illinois courts had long considered a defendant's youth and mentality even where

the defendant was over the age of 18. See *Clark*, 2023 IL 127273, ¶¶ 92-93 (also citing *Haines* for the same purpose). Notably, the cases relied on in *Haines*—*People v. Maldonado*, 240 Ill. App. 3d 470 (1992); *People v. Center*, 198 Ill. App. 3d 1025 (1990); and *People v. Adams*, 8 Ill. App. 3d 8 (1972)—were all decided prior to defendant's sentencing in 1994, not to mention his direct appeal and initial postconviction petition. We further observe that the defendant in *Haines* cited the same cases as defendant in the instant appeal in support of his argument that courts "consistently rejected the notion that a life sentence for an adult age 18 or older violated Illinois' proportionate penalties clause." See *People v. Griffin*, 368 Ill. App. 3d 369, 379 (2006); *People v. McCoy*, 337 Ill. App. 3d 518, 523 (2003); *People v. Winters*, 349 Ill. App. 3d 747, 750 (2004). As the *Haines* court noted, however, those cases merely found the supreme court's decision in *Leon Miller* to be inapplicable under the circumstances present in each of the cases. Thus, while later case law would certainly have made it easier for defendant to raise his claim, defendant "had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause" (*Haines*, 2021 IL App (4th) 190612, ¶ 49; *Clark*, 2023 IL 127273, ¶ 93) at the time of his initial postconviction proceeding and therefore is unable to establish cause.

¶ 29    We are similarly unpersuaded by defendant's suggestion that the holdings in *Dorsey*, *Clark*, and *Moore* should not apply in this case, as those cases all involved defendants who had received mental health evaluations at some point in the trial proceedings. The supreme court in those cases did not draw such a distinction in its holdings. Instead, the supreme court's decisions were based on the finding that Illinois law had long treated minors and younger adults differently than more mature adults for sentencing purposes. See *Dorsey*, 2021 IL 123010, ¶ 74; *Clark*, 2023 IL 127273, ¶¶ 92-94; *Moore*, 2023 IL 126461, ¶¶ 41-42. While the *Moore*

court noted that, in the case before it, "[t]he evidence and arguments raised at the sentencing hearings *** show the parties knew Illinois law recognized the special status of young adults" (*Moore*, 2023 IL 126461, ¶ 42), such an observation in no way limits the supreme court's holding that "*Miller* did not change the law applicable to young adults" and therefore did not provide cause for the defendants' successive petitions (*id.*).

¶ 30    In this case, defendant was 19 years old at the time of the offense, and received a discretionary sentence of natural life in prison. Defendant failed to raise a challenge under the proportionate penalties clause in his direct appeal, in his initial postconviction petition, in his section 2-1401 petitions for postjudgment relief, or in his three prior attempts at filing successive postconviction petitions, and our supreme court has made clear that the emergence of subsequent case law making such a claim easier does not provide cause for his failure to raise the claim earlier. As defendant has failed to establish cause to warrant relaxation of the bar against filing a successive postconviction petition, we have no need to consider whether he has established prejudice. See *Moore*, 2023 IL 126561, ¶ 42. We therefore affirm the circuit court's denial of defendant's motion for leave to file a fourth successive postconviction petition.

¶ 31                                CONCLUSION

¶ 32    The circuit court's denial of defendant's motion for leave to file a fourth successive postconviction petition is affirmed, where defendant has failed to establish cause to warrant relaxation of the bar against successive postconviction petitions.

¶ 33    Affirmed.