THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE C. McCOY, Defendant-Appellant.

Second District    No. 2—01—0603

Opinion filed February 25, 2003.

G. Joseph Weller and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Stephen E. Norris and Trent M. Marshall, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County, defendant, Willie C. McCoy, was found guilty of three counts of first-degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 2000)), one count of attempted first-degree murder (720 ILCS 5/8—4(a), 9—1(a)(2) (West 2000)), and one count of aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 2000)) based upon accountability. Defendant received a mandatory sentence of natural life imprisonment under the multiple-murder provision of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 2000)). On appeal,

defendant argues that his mandatory sentence of natural life based upon accountability offends the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We affirm.

The evidence at trial established the following. Willie "Bay-Bay" Fullilove, a 15-year-old member of the Black Disciples street gang, sold drugs from apartment No. 12, which was located in an Elgin apartment complex known as "the schoolhouse." Gangster Disciples' members, including Quanson "Guda" Carlisle and Anthony Cooper, also sold drugs at the schoolhouse, from apartment No. 23. The Gangster Disciples kept a safe containing drugs and handguns in schoolhouse apartment No. 28. Both gangs are affiliated under the same gang "nation" and coexisted at the schoolhouse without incident. One day, however, Fullilove lent his car to Carlisle and Cooper, and, when the two men were away, Fullilove stole the safe.

Fullilove was subsequently accused of stealing the safe. Fullilove informed a higher-ranking member of the Black Disciples, who, at a meeting to discuss the matter, told defendant and other members of the Black Disciples to "handle the situation." Allegedly, before resorting to violence, the Black Disciples were to talk to the Gangster Disciples and convince them to leave Fullilove alone. However, handguns were passed out to several of the Black Disciples' members who were present at the meeting. Defendant did not take a gun.

After the meeting, defendant and the other members of the Black Disciples proceeded to the schoolhouse, where they met Fullilove at his apartment. One of the members stated, "Let's kill the mother-fuckers." Another said that he was "gonna kill 'em if they get out of line."

Defendant checked to make sure that apartment No. 23 was occupied and confirmed that people were present there. Defendant agreed when one of his compatriots stated that "we got these pussy mother-fuckers now." Those members who were armed inspected their weapons in defendant's presence. Defendant then called the apartment on his cellular phone and told Carlisle that they needed to talk.

The group of Black Disciples, except Fullilove, proceeded to apartment No. 23. Defendant knocked on the door, and, subsequently, Carlisle and Cooper entered the hallway. Carlisle talked with one Black Disciple who was armed. Their conversation deteriorated and Carlisle went back into apartment No. 23. Cooper was shot in the hallway. Armed Black Disciples then entered the apartment and "opened fire." Other Black Disciples, including defendant, fled the schoolhouse and waited outside in a "get-away van." Defendant called Fullilove and told him to get out of his apartment. As the group fled the scene in the van, defendant collected the weapons and placed them in a paper bag,

which he stowed in a grassy area outside town. The melee left three people dead, all of whom had been shot in the head. Another Gangster Disciple, Corey Boey, was injured by multiple gunshots.

The jury found defendant guilty, based on accountability, of one count each of aggravated battery with a firearm and attempted first-degree murder and three counts of first-degree murder. At the conclusion of the sentencing hearing, because defendant was found guilty of murdering more than one victim, the trial court sentenced defendant to mandatory life imprisonment pursuant to section 5—8—1(a)(1)(c)(ii) of the Unified Code. The trial court found that great bodily injury had been inflicted on Boey and sentenced defendant to 10 years' imprisonment for attempted first-degree murder. The conviction of aggravated battery with a firearm merged into the attempted first-degree murder conviction. Defendant timely appeals.

■ On appeal, defendant contends that the multiple-murder sentencing statute is unconstitutional as applied to an offender convicted under a theory of accountability. Although defendant did not raise this issue below, a constitutional issue may be raised at any time. *People v. Wagener*, 196 Ill. 2d 269, 279-80 (2001).

■ Our *de novo* review begins with the presumption that the statute is constitutional. *People v. Miller*, 202 Ill. 2d 328, 335 (2002). The party challenging the statute bears the burden of showing its invalidity. *People v. Davis*, 177 Ill. 2d 495, 501 (1997).

■ The multiple-murder sentencing statute provides, in relevant part:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder,

\* \* \*

(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,

\*\*\*

(ii) \*\*\* is found guilty of murdering more than one victim[.]" 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 2000).

Defendant argues that, when a mandatory life sentence is imposed for a conviction based upon accountability, nobody assesses the seriousness of the defendant's conduct at any stage, at trial or at sentencing, because intent to promote "any offense" is sufficient for accountability. Defendant asserts that "[s]atisfying the proportionality requirement necessarily requires that some human being, at some

stage in the process, judge the seriousness of what the defendant did, and the likelihood of restoring [him] to useful citizenship."

■ Under section 5—2(c) of the Criminal Code of 1961 (720 ILCS 5/5—2(c) (West 2000)), which incorporated the long-established "common-design rule," a defendant is "legally accountable for the conduct of another when *** [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." A defendant's intent may be inferred from the nature of his or her actions and the circumstances accompanying the criminal conduct.

■ Under the common-design rule, if " 'two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts.' [Citation.]" *People v. Williams*, 193 Ill. 2d 306, 338-39 (2000). The word "conduct" encompasses *any* criminal act done in furtherance of the planned and intended act. *People v. Terry*, 99 Ill. 2d 508, 515 (1984). Because the underlying intent of the accountability statute incorporates the principle of the common-design rule, even if a misdemeanor was originally intended, the defendant is deemed as guilty as the perpetrator of the ultimate felony offense. See *Terry*, 99 Ill. 2d at 515.

■ Defendant was present at the meeting in which handguns were passed out to some of those present and they were told to "handle the situation" between the Black Disciples and the Gangster Disciples. Defendant was aware that some of the gang members were armed and that they exhibited a penchant for violence. Defendant checked to make sure that some Gangster Disciples were present in apartment No. 23, and he called the apartment and lured one of the members out into the hallway. After the shooting began, defendant ran ahead to the "get-away van," called Fullilove and warned him to leave the schoolhouse, and then subsequently collected and concealed the weapons that had been used in the shooting. Here, the substantive offense that the group conspired to commit was, at the very least, an act of aggravated intimidation (see 720 ILCS 5/12—6.2 (West 2000)) or aggravated assault (see 720 ILCS 5/12—2 (West 2000)). Each person therefore was responsible for the conduct of the other that was done in furtherance of the intended act. The result of their concerted acts was murder and, under the common-design rule, all are legally accountable for those murders. Thus, defendant is deemed as guilty as the perpetrators of the ultimate offenses.

We reject defendant's contention that the constitution was violated because the seriousness of his conduct and his rehabilitative potential were never considered during sentencing. Defendant was sentenced to natural life under section 5—8—1 of the Unified Code (730 ILCS 5/5—8—1 (West 2000)) because he was convicted of a triple homicide. Article I, section 11, of the Illinois Constitution requires that criminal penalties be determined in accordance with the seriousness of the crime. Ill. Const. 1970, art. I, § 11. However, a defendant's rehabilitative potential need not be given more weight than the severity of the offense. *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). The legislature's discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict the judiciary's discretion in imposing sentences. *Taylor*, 102 Ill. 2d at 208. The legislature is assumed to have considered the relevant factors in establishing sentences, and the resultant scheme is presumptively proper. *Taylor*, 102 Ill. 2d at 206.

The provisions in section 5—8—1(a)(1)(c) for a sentence of natural life imprisonment upon conviction of murdering more than one victim have been held not to infringe unduly upon the judicial power or violate the proportionate penalties clause of our constitution. *Taylor*, 102 Ill. 2d at 209. Moreover, Illinois courts have upheld section 5—8—1 against similar constitutional challenges where the defendant was an accomplice to the killer (*People v. Driskel*, 224 Ill. App. 3d 304, 317 (1991)) and where defendants have been found guilty by accountability. The focus is the nature of the homicides, not the defendant's role in them. See, *e.g.*, *People v. Koger*, 287 Ill. App. 3d 764, 766 (1997); *People v. Perry*, 230 Ill. App. 3d 720, 722 (1992); *People v. Foster*, 198 Ill. App. 3d 986, 998-99 (1990).

Defendant claims that *Foster*, *Perry*, and *Koger* were wrongly decided because of their reliance on *Taylor*. Defendant notes that the constitutional challenge rejected in *Taylor* had nothing to do with accountability and that the conviction of Dorothy Taylor, one of the defendants, established personal culpability. It is apparent from the facts of the case that Dorothy Taylor did not personally kill the victims, and thus, contrary to defendant's assertion, she was found guilty of first-degree murder based upon accountability. However, it makes no difference that the court in *Taylor* did not address the issue of accountability because it is the nature of the act and not the identity of the actor that permits the sentence. Thus, for sentencing purposes, a defendant found guilty under the common-design rule is deemed as culpable as the principal unless a statutory exception exists or in certain situations where the death penalty is sought. We see no reason to depart from the reasoning of the courts and find that section

5—8—1 is not unconstitutional under article I, section 11, as applied to those found guilty by accountability.

Defendant next suggests that *People v. Ratzke*, 253 Ill. App. 3d 1054 (1993), supports the conclusion that the constitution is violated unless a trial court, after considering a defendant's relative culpability, has the discretion to impose a natural life sentence under section 5—8—1(a)(1)(c)(ii). We agree with the State that defendant's reliance on *Ratzke* is misplaced. First, the defendant's natural life sentence in *Ratzke*, which arose from a conviction based on the common-design rule, resulted from the trial court's discretionary finding that the murder committed by the principal was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty under section 5—8—1(a)(1)(b) of the Unified Code (730 ILCS 5/5—8—1(a)(1)(b) (West 1996)).

Second, we never held that the constitution requires the trial court to exercise discretion to consider a defendant's relative culpability. In fact, we specifically rejected the defendant's assertion that being convicted under an accountability theory precluded the imposition of a natural life term because the defendant did not possess the requisite mental state for an enhanced penalty. We held that the enhanced penalty of an extended-term sentence may be imposed upon a defendant found guilty based upon an accountability theory because the statutory accountability provisions make a defendant criminally responsible for a wide range of criminal acts and there is no sound reason to differentiate exceptionally brutal or heinous conduct from other conduct for which a participant in a criminal endeavor may be held criminally responsible. *Ratzke*, 253 Ill. App. 3d at 1066-67.

Relying on *People v. Farmer*, 165 Ill. 2d 194 (1995), and *People v. Gean*, 143 Ill. 2d 281 (1991), defendant last contends that section 5—8—1(a)(1)(c)(ii) should be construed as mandatory only "when a mental state with respect to the murder[er]s themselves is determined by the trier of fact." We fail to see the relevance of defendant's argument. *Farmer* and *Gean* involved instances in which the applicable felony statutes appeared to impose absolute liability because they did not require a mental state. The supreme court found that the legislature did not intend to impose absolute liability under the statutes, and the term "knowingly" was read into the text of the statutory offenses. *Farmer*, 165 Ill. 2d at 206-07; *Gean*, 143 Ill. 2d at 288. Here, because an accomplice is legally accountable for the conduct of the person he aids, the mental state of the person he aids may, in essence, be imputed to a defendant convicted under an accountability theory. See *Ratzke*, 253 Ill. App. 3d at 1065.

We note that defendant filed a motion to cite as additional author-

ity *People v. Miller*, 202 Ill. 2d 328 (2002), which was published during the pendency of the present appeal. We granted the motion and now address the applicability of *Miller* to the present case. In *Miller*, the defendant, a 15-year-old juvenile, was charged with two counts of first-degree murder based upon accountability and was transferred to be prosecuted as an adult. Subsequently, the defendant was convicted of both counts. However, the trial court concluded that the statutorily mandated sentence as applied to the defendant would offend the proportionate penalties clause. The supreme court agreed with the trial court's judgment. The court found that the convergence of the accountability statute, the transfer statute, and the multiple-murder sentencing statute eliminated the trial court's ability to consider any mitigating factors, such as the defendant's age at the time of the crime or his or her individual level of culpability. *Miller*, 202 Ill. 2d at 341. The court concluded that this was particularly harsh and unconstitutional when applied to the 15-year-old juvenile defendant, who had but one minute to contemplate his decision to participate in the incident and stood as a lookout. *Miller*, 202 Ill. 2d at 341. In so holding, the court recognized that its decision was "consistent with the long-standing distinction made in this state between adult and juvenile offenders." *Miller*, 202 Ill. 2d at 341.

The present case does not involve the juvenile transfer rules characterized in *Miller*. Unlike in *Miller*, defendant was 19 years of age at the time of the offense, and he was initially prosecuted and convicted as an adult under a theory of accountability. Moreover, in *Miller*, the defendant had little time to consider his actions and minimally participated in the crime, whereas, in the present case, defendant had time to ponder the consequences of his involvement and intimately participated in the offense. Accordingly, we find *Miller* inapposite.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GROMETER and KAPALA, JJ., concur.