# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Johnson*, 2013 IL App (4th) 120162

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH JOHNSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0162 |
| Filed | April 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the absence of proof beyond a reasonable doubt that defendant possessed heroin with the intent to deliver it, defendant's convictions on two counts of unlawful possession of a controlled substance with intent to deliver were reduced to the lesser-included offenses of unlawful possession of a controlled substance, his sentence was vacated and the cause was remanded for a new sentencing hearing. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 11-CF-56; the Hon. James E. Souk, Judge, presiding. |
| Judgment | Affirmed in part as modified and vacated in part; cause remanded with directions. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | Ronald C. Dozier, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Justice Knecht concurred in the judgment and opinion. |
| | Justice Appleton concurred in part and dissented in part, with opinion. |

## OPINION

¶ 1    Following a July 2011 trial, a jury convicted defendant, Kenneth Johnson, of (1) unlawful possession with intent to deliver a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) (720 ILCS 570/401(a)(1)(B) (West 2008)) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin) (720 ILCS 570/401(a)(1)(A) (West 2008)). The trial court thereafter sentenced defendant to 10 years in prison.

¶ 2    Defendant appeals, arguing that the State failed to prove him guilty beyond a reasonable doubt. Because we conclude that the State failed to present evidence that defendant intended to deliver the heroin under the theory the State presented to the jury, we affirm in part as modified, vacate in part, and remand with directions.

¶ 3                              I. BACKGROUND

¶ 4    In January 2011, the State charged defendant with (1) unlawful possession with intent to deliver a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) (720 ILCS 570/401(a)(1)(B) (West 2008)) (count I) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin) (720 ILCS 570/401(a)(1)(A) (West 2008)) (count III). Defendant's case proceeded to a July 2011 jury trial, at which the State presented the following evidence and argument.

¶ 5    In his opening statement, the prosecutor outlined for the jury the State's charges and the evidence that it planned to offer to satisfy its burden of proof. In that pursuit, the prosecutor explained that the issues before the jury were as follows: "whose [heroin] was it and who knew about it." The prosecutor concluded his opening remarks by noting that the State would be asking the jury to return a guilty verdict on both charges based on the fact that defendant was "guilty of constructively possessing this heroin." Defendant's opening statement focused

primarily on explaining that the State's key witness, upon whom the State's case "depend[ed] entirely," did not support the charges against defendant.

¶ 6    The State called Illinois State Trooper Scott Ahrens, who testified that at approximately 1:20 a.m., he initiated a traffic stop for a speeding violation on Interstate 55. Ahrens found three people in the vehicle, Stephen McCrady, Rhonda Simmons, and defendant. McCrady was in the driver's seat, Simmons was in the front passenger seat, and defendant was in the backseat of the vehicle. Ahrens ordered McCrady to exit the vehicle because he had parked partially on the interstate highway and it was "obvious from the get-go" that McCrady did not have a driver's license. Ahrens thereafter ordered defendant to move the vehicle onto a nearby exit ramp.

¶ 7    Illinois State Trooper Shadd Gordon testified that he assisted Ahrens in the traffic stop. When he arrived on the scene, McCrady was inside Ahrens' vehicle and Ahrens was handcuffing defendant. Ahrens asked Simmons to exit the vehicle, and she did so, carrying her purse and a McDonald's bag. Ahrens told Simmons that she could leave her things in the vehicle. Simmons responded by placing her purse in the vehicle but tossing the McDonald's bag on the ground beside the vehicle. She thereafter picked the bag up off the ground but left a cup that she had previously thrown out the window of the vehicle. Gordon retrieved the cup and found a black metal canister inside of it, which contained what would later be identified as heroin. Gordon later found an additional amount of heroin in a pill bottle inside Simmons' purse. (Defendant stipulated to the fact that the substances recovered were heroin.)

¶ 8    Ahrens asked Simmons whether "everything" was hers, and she responded by nodding her head to indicate, "yes." Simmons later said that she knew about the black metal container and the pill bottle, but did not know about the cup; she explained to Ahrens that McCrady had ordered her to hold the heroin when they left Chicago because McCrady and defendant believed that women were less likely to be searched if confronted by the police. Simmons stated that she was concerned when Ahrens stopped them for speeding, and she wanted to get rid of the heroin. However, when defendant moved the vehicle on to the exit ramp, defendant ordered her to hold onto the heroin. Ahrens then interviewed defendant, who gave inconsistent accounts of why the three were traveling from Chicago.

¶ 9    Simmons testified that she left St. Louis with McCrady and defendant to get heroin from someone McCrady knew in Chicago. She said that the reason defendant came along was to be the driver, given that neither she nor McCrady had a driver's license. The group passed around a small bottle of heroin for their personal use on the way to Chicago and on the return trip. All three knew why they were traveling to Chicago; McCrady wanted to purchase heroin from his source. As to why they traveled to Chicago and who intended to keep the heroin to distribute, Simmons testified on cross-examination as follows:

"[SIMMONS:] First of all, I knew exactly what [McCrady] was doing.

***

[DEFENSE COUNSEL:] He told you to hold [the heroin]?

[SIMMONS:] Yes.

[DEFENSE COUNSEL:] And when you testified earlier, you said you took it and held it because [McCrady] told you to?

[SIMMONS:] Yes.

[DEFENSE COUNSEL:] Right? You're kind of in a position where you're expected to do what he tells you to do?

[SIMMONS:] Well first of all, that's my kid's father. He supported my habit.

[DEFENSE COUNSEL:] Okay. *** I guess we should explain; maybe the jury knows, maybe they don't. But when you say he [']supported your habit,['] means he bought the heroin for you and let you use it, right?

[SIMMONS:] He didn't buy the heroin for me, he–

[DEFENSE COUNSEL:] No, when you say–

[SIMMONS:] He supplied me to make sure I wasn't sick every day. That's what he did.

[DEFENSE COUNSEL:] Okay. But that means he gave you heroin every day so that you could use it, right?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] That's what you mean? All right. But [McCrady] was the one giving you heroin before, and you indicated you were clean for a while, and when you started dating him, you started using again; is that right?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] And so–but [McCrady] made the purchase, [he] owned the heroin, right?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] He just had you hold it?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] He wasn't saying, take it home, do whatever you want with it, was he?

[SIMMONS:] No.

[DEFENSE COUNSEL:] It was still his?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] And you said you passed it around, but you said [McCrady] told you to?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] Okay. What did [you do] with that heroin, you did what [McCrady] told you to do?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] Okay. And you're upset today because [McCrady] got you into this and he's leaving you hanging, right?

[SIMMONS:] Both of them are, for real. Because they still lying about they was [*sic*]–it wasn't theirs. So whose was it?

[DEFENSE COUNSEL:] Okay. But [McCrady] planned the trip, right?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] And [McCrady] talked to the dealer, right?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] And [McCrady] *** was the one who said [']let's go to Chicago and get the stuff[']?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] And when you got back to St. Louis, [McCrady] was going to take it, wasn't he?

[SIMMONS:] Right.

[DEFENSE COUNSEL:] Do you know what he was going to do with it?

[SIMMONS:] I guess he was–well, I know what he was going to do with it.

[DEFENSE COUNSEL:] What was he–

[SIMMONS:] He was going to sell it."

¶ 10    Simmons concluded by noting that McCrady had indeed purchased the heroin from his source in Chicago, and the group immediately began the return trip to St. Louis. On that return trip, Ahrens stopped them for speeding.

¶ 11    Defendant did not testify or call any witnesses in his defense.

¶ 12    In his closing argument, the prosecutor focused his argument on possession–namely, how possession can be both constructive and joint–positing, as follows:

"Now the evidence in this case is that *** McCrady was kind of the lead guy here. He was the one directing traffic on this trip. There's no question that *** McCrady intended to deliver this when they got back to St. Louis.

Did [defendant] have a part in that? To tell you the truth, I don't know. I mean I know he was in the car, he intended to deliver it to St. Louis with the rest of them. That's intent to deliver. We don't have to show you that he had someone in mind in St. Louis – hey, I'm going to go take this to Bob. This is Bob's heroin. But when he was in the car on that trip, absolutely. He knew exactly where it was going, and he intended to deliver that with the other three to St. Louis from Chicago."

¶ 13    During its deliberations, the jury sent a note to the trial court, stating as follows:

"We are 10-2 guilty with Count 1. The question in dispute is the definition of 'intent to deliver.' Help us with information to explain what constitutes intent [and] what is meant by 'deliver.' "

Following a hearing on the jury question, the court further instructed the jury on intent to deliver, as follows:

"A person intends to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct.

The word 'deliver' means to transfer possession or to attempt to transfer possession. And delivery may *** occur with or without the transfer or exchange or money, or with

-5-

or without the transfer or exchange of other consideration."

¶ 14 The jury was not instructed at any point, nor did the State ever specifically argue, that defendant was guilty based on an accountability theory. However, the jury did receive an instruction on the lesser-included offenses of (1) unlawful possession of a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin).

¶ 15 Shortly thereafter, the jury convicted defendant of unlawful possession with intent to deliver a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin). Following an August 2011 sentencing hearing, the trial court sentenced defendant to 10 years in prison on count I, unlawful possession (more than 100 grams but less than 400 grams of a substance containing heroin).

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 Defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends that the State's evidence was insufficient to prove him guilty of possession with intent to deliver the heroin because the State failed to show that he possessed the heroin, constructively or otherwise, and that he intended to deliver it. The State responds that allowing all reasonable inferences in favor of the prosecution, it sufficiently proved that defendant jointly and constructively possessed the heroin with the intent to deliver it when the group returned to St. Louis. For the reasons that follow, we reverse defendant's conviction and remand for a new sentencing hearing.

¶ 19 A. The Standard of Review

¶ 20 When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to decide whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Price*, 2011 IL App (4th) 100311, ¶ 16, 958 N.E.2d 341. In so doing, we are mindful that we must draw all reasonable inferences from the record in favor of the prosecution. *Id.* In short, we will not overturn a criminal conviction " 'unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.' " Id. (quoting *People v. Givens*, 237 Ill. 2d 311, 334, 934 N.E.2d 470, 484 (2010)). Nevertheless, the State must prove each element of the crimes charged beyond a reasonable doubt. *People v. Tilley*, 2011 IL App (4th) 100105, ¶ 13, 958 N.E.2d 1123.

¶ 21 B. The Offenses in This Case

¶ 22 In this case, the jury convicted defendant of (1) unlawful possession with intent to deliver a controlled substance (more than 100 grams but less than 400 grams of a substance

containing heroin) (720 ILCS 570/401(a)(1)(B) (West 2008)) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin) (720 ILCS 570/401(a)(1)(A) (West 2008)).

¶ 23                              1. *Possession of a Controlled Substance*

¶ 24       In *People v. Scott*, 2012 IL App (4th) 100304, ¶ 20, 966 N.E.2d 340, this court concluded that sufficient evidence existed to support a finding that the defendant had constructive possession of methamphetamine. In so concluding, we noted that "[a] reasonable juror could have inferred that defendant exhibited an intent and opportunity to continue exercising dominion over the methamphetamine by concealing it and attempting to destroy related paraphernalia and trace evidence before he answered the door." *Id.* In *Scott*, we outlined the standard for proving possession in a case involving controlled substances, as follows:

> "In drug-related cases in general, the element of possession requires '[the] defendant's knowledge of the presence of the narcotics and his immediate and exclusive control over them.' *People v. Morrison*, 178 Ill. App. 3d 76, 90, 532 N.E.2d 1077, 1086 (1988). 'Possession can be actual or constructive.' *Id.* Actual possession exists where the defendant exhibits 'some form of dominion over the unlawful substance, such as trying to conceal it or throw it away.' *Id.* Constructive possession is shown where the defendant exercises 'no actual personal present dominion over the narcotics, but there is an intent and a capability to maintain control *** over them.' *Id.* For example, '[w]here narcotics are found on the premises rather than on a defendant, constructive possession may be inferred from facts showing that he once had physical control with intent to exercise control in his own behalf, he has not abandoned the drugs and no other person has obtained possession.' *People v. McLaurin*, 331 Ill. App. 3d 498, 502, 772 N.E.2d 296, 300 (2002). '[E]vidence establishing constructive possession is often wholly circumstantial.' (Internal quotation marks omitted.) *People v. Minniweather*, 301 Ill. App. 3d 574, 580, 703 N.E.2d 912, 916 (1998)." *Scott*, 2012 IL App (4th) 100304, ¶ 19, 966 N.E.2d 340.

¶ 25                              2. *Possession of Heroin in This Case*

¶ 26       Here, the State presented sufficient evidence that defendant had constructive possession of the heroin as a principal, in that he exercised dominion over the heroin by (1) traveling to Chicago, knowing that the trip was for the purpose of purchasing heroin, (2) actually possessing a small amount of the heroin when he was using it, and (3) acting to conceal the heroin by ordering Simmons to hold it because he believed that the police were less likely to search a woman. This does not end our inquiry however, given that the jury convicted defendant of possession *with intent to deliver*. Accordingly, we turn our analysis to whether the State presented sufficient evidence that defendant possessed the heroin with intent to deliver.

¶ 27                              3. *Intent To Deliver*

¶ 28        Initially, we note that direct evidence of the intent to deliver a controlled substance is rare; thus, intent must usually be proved by circumstantial evidence. *People v. Bond*, 405 Ill. App. 3d 499, 512, 942 N.E.2d 585, 596 (2010). Therefore, we examine the nature and quantity of the circumstantial evidence presented in support of the inference of intent to deliver. *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026 (1995); see *People v. Clark*, 349 Ill. App. 3d 701, 704, 812 N.E.2d 584, 587 (2004) (noting that circumstantial evidence of intent to deliver "must be made on a case-by-case basis pursuant to a careful review of the circumstances surrounding defendant's arrest"). Generally, we look to a variety of factors as indicative of intent to deliver, including, among other things, (1) whether the quantity is too large to be viewed as being solely for personal use, (2) the purity of the drug confiscated, (3) possession of weapons, (4) possession of large amounts of cash, (5) possession of police scanners, beepers, or cellular telephones, (6) possession of drug paraphernalia, and (7) the manner in which the substance is packaged. *People v. Rivera*, 293 Ill. App. 3d 574, 576, 688 N.E.2d 752, 753 (1997) (citing *Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1026-27). However, given the numerous types of controlled substances and the infinite number of potential scenarios, no "hard and fast" rule exists when determining whether the facts of a case support a finding of intent to deliver. *Robinson*, 167 Ill. 2d at 414, 657 N.E.2d at 1030.

¶ 29                         4. *Intent To Deliver in This Case*

¶ 30        Here, the evidence presented clearly showed that McCrady possessed the heroin with intent to deliver. Indeed, Simmons testified that the entire trip was McCrady's idea, that he exercised significant control over the heroin, and that he planned to sell the heroin when he returned to St. Louis. It appears from the transcript of proceedings that the State's theory of the case was that defendant either (1) shared McCrady's intent in that regard or (2), as the prosecutor argued in closing, that defendant "intended to deliver [the heroin] *** to St. Louis from Chicago." We address each theory in turn.

¶ 31        First, the State's primary theory of the case appears to be that defendant shared McCrady's intent to deliver. The State's evidence, however, does not support that theory. Viewed in the light most favorable to the State, drawing all reasonable inferences from the record in favor of the prosecution, the State's evidence showed that (1) defendant agreed to drive McCrady and Simmons to Chicago, knowing that McCrady needed him to drive him there to purchase heroin, and (2) defendant exerted control over some of that heroin–indeed, actually possessing it when he was using some of it for personal use. However, the State's key witness, Simmons, also testified that when they returned to St. Louis, McCrady was going to take the heroin and sell it. That evidence went totally uncontradicted.

¶ 32        In asserting on appeal that by drawing all reasonable inferences from this evidence to conclude that defendant intended to deliver the heroin in this case, the State is essentially asking this court to impute McCrady's intent–that is, his mental state–to defendant. However, intent to deliver as a mental state can be imputed only where the State's theory of the case is one of accountability. *People v. McCoy*, 337 Ill. App. 3d 518, 524, 786 N.E.2d 1052, 1057

(2003) ("because an accomplice is legally accountable for the conduct of the person he aids, the mental state of the person he aids may, in essence, be imputed to a defendant convicted under an accountability theory"). The State did not pursue that theory at trial, the jury was not instructed on that theory, and for this court to uphold his conviction on that theory now on appeal would deprive defendant of his due process right to argue in opposition to that theory. See *People v. Millsap*, 189 Ill. 2d 155, 166, 724 N.E.2d 942, 948 (2000) (holding that the defendant was deprived of his due process right to make an argument in opposition to an accountability theory where the trial judge instructed the jury on accountability in response to a jury question *after* the jury had begun deliberations).

¶ 33     The State's apparent second theory, that defendant possessed the heroin with intent to deliver because he intended to "deliver it" from Chicago to St. Louis, fails for much the same reason. "Deliver" in this context means more than simply transporting a controlled substance from one place to another. At the very least, it requires an attempt to transfer *possession*. See 720 ILCS 570/102(h) (West 2008) (" 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship."). Under the State's apparent second theory, "transfer" from one place to another is sufficient. It is not.

¶ 34     More likely, what the prosecutor was alluding to in closing was that defendant could be accountable for McCrady's intent to deliver the heroin when he returned to St. Louis, as the following statements from the prosecutor–which we have previously quoted–demonstrate:

"Now the evidence in this case is that *** McCrady was kind of the lead guy here. He was the one directing traffic on this trip. There's no question that *** McCrady intended to deliver this when they got back to St. Louis.

     Did [defendant] have a part in that? To tell you the truth, I don't know. I mean I know he was in the car, he intended to deliver it to St. Louis with the rest of them. That's intent to deliver. We don't have to show you that he had someone in mind in St. Louis–[']hey, I'm going to go take this to Bob. This is Bob's heroin[']. But when he was in the car on that trip, absolutely. He knew exactly where it was going and he intended to deliver that with the other three to St. Louis from Chicago."

Unfortunately, the State did not argue an accountability theory to the jury or ask to have the jury so instructed. As a result, for the reasons the supreme court explained in *Millsap*–which we have previously outlined–we cannot affirm defendant's conviction on that basis.

¶ 35     In closing, we note that we have advisedly characterized the State's failure to pursue an accountability theory as unfortunate. We have done so because the evidence presented in this case would have unequivocally supported a conviction based upon that theory. That is, defendant, both before and during McCrady's commission of the offense of unlawful possession of a controlled substance with intent to deliver, and with intent to promote or facilitate McCrady's commission of that offense, aided and abetted McCrady in the planning or commission of that offense. See 720 ILCS 5/5-2(c) (West 2010).

¶ 36     Although the evidence in this case is insufficient to prove defendant guilty of possession with intent to deliver, we find it sufficient to support convictions on the lesser-included offenses of (1) unlawful possession of a controlled substance (more than 100 grams but less

than 400 grams of a substance containing heroin) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin). See *People v. Nixon*, 278 Ill. App. 3d 453, 459, 663 N.E.2d 66, 70 (1996). Accordingly, we reduce defendant's convictions, pursuant to Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), to (1) unlawful possession of a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin) (720 ILCS 570/402(a)(1)(A), (B) (West 2008)). Consequently, we vacate defendant's sentence and remand the cause to the trial court for a new sentencing hearing.

¶ 37                                                      III. CONCLUSION

¶ 38        For the reasons stated, we reduce defendant's convictions to the lesser-included offenses of (1) unlawful possession of a controlled substance (more than 100 grams but less than 400 grams of a substance containing heroin) and (2) unlawful possession of a controlled substance (more than 15 grams but less than 100 grams of a substance containing heroin). Accordingly, we affirm in part as modified, vacate the sentence imposed, and remand to the trial court for a new sentencing hearing. Because the State successfully defended a portion of the criminal judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal. See *People v. Smith*, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985) (citing *People v. Nicholls*, 71 Ill. 2d 166, 178, 374 N.E.2d 194, 199 (1978)).

¶ 39        Affirmed in part as modified and vacated in part; cause remanded with directions.

¶ 40        JUSTICE APPLETON, concurring in part and dissenting in part.

¶ 41        I respectfully dissent in part and would only sustain defendant's conviction for possession of a controlled substance of more than 15 grams but less than 100 grams of a substance containing heroin. I would do so because I believe defendant did not exert possession of the greater amount by telling Simmons to keep the heroin then in her possession given to her by McCrady.