NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220529-U

No. 4-22-0529

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 26, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| TYRONE MADDOX, | ) | No. 19CF204 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed defendant's conviction and sentence.

¶ 2       In August 2019, the State charged defendant, Tyrone Maddox, with one count of possession with intent to deliver 100 to 400 grams of cocaine (720 ILCS 570/401(a)(2)(B) (West 2018)) and one count of possession of 100 to 400 grams of cocaine (*id.* § 402(a)(2)(B)), after police officers discovered cocaine in the trunk of defendant's car during a traffic stop. A jury found defendant guilty of both counts. The trial court later sentenced defendant to 22 years in prison.

¶ 3       Defendant appeals, arguing (1) the trial court erred by admitting defendant's prior conviction in 1999 for delivery of cocaine, (2) trial counsel was ineffective for failing to introduce fingerprint evidence, and (3) the State failed to prove defendant guilty beyond a reasonable doubt. We disagree and affirm.

¶ 4                                 I. BACKGROUND

¶ 5                                         A. The Charges

¶ 6          In August 2019, the State charged defendant with possession with intent to deliver

100 to 400 grams of cocaine (*id.* § 401(a)(2)(B)) and possession of 100 to 400 grams of cocaine

(*id.* § 402(a)(2)(B)), following a traffic stop.

¶ 7                                     B. The Motion *in Limine*

¶ 8          In March 2020, the State filed a motion *in limine* seeking to introduce defendant's

1999 conviction in Lake County, Indiana for "Dealing in Cocaine or Narcotic Drug" as

substantive evidence of his intent to deliver the cocaine in his car in the present case.

¶ 9          In May 2020, the trial court conducted a hearing on the State's motion. Defendant

objected, arguing that (1) the probative value of the conviction was outweighed by its prejudicial

effect and (2) the prior conviction was factually dissimilar to the present case. Specifically,

defendant argued that the prior conviction involved a "hand-to-hand" delivery while the present

case involved drugs being found in a vehicle.

¶ 10         The trial court asked the parties to comment on the age of the prior conviction.

Defendant argued that it was "substantially old" and just because "someone acted in a certain

pattern of behavior 20 years ago does not mean [he would continue to do so] 20 years later." The

State responded that the age of the conviction was inconsequential because defendant had been

incarcerated multiple times for other offenses following that conviction.

¶ 11         The State further argued as follows:

> "I think clearly it goes to show intent to deliver. He knows how the drug
>
> trade works. It is either being done because he is trying to make money running a
>
> package or for another reason, but in talking to troopers, we believe testimony
>
> would come out that he says it's not his, but when they ask, well, then whose is it,

what's—you know, whose is it, he says, well, I can't speak to that so I think that that statement I can't speak to that—it's not a denial. He doesn't say he doesn't know. He's not denying knowledge of it. He just is saying I can't talk about it.

And I think that prior conviction shows his knowledge in the drug trade. And in this case we think he's more of a courier as opposed to a street-level individual, but clearly the intent to deliver from the prior conviction would help bolster that statement that I can't speak to it. He can't speak to it because he's worried about the risk. He knows what's happening, and there may be repercussions if he rolls on somebody else."

¶ 12 The trial court granted the State's motion to admit the prior conviction at trial, stating as follows:

"All right. I think it jumps the hurdle for admissibility. Clearly [defendant's trial counsel] will flesh out and argue vehemently probably to the jury that—that whether or not the fact that he has been convicted of dealing cocaine in the past is—how strong that evidence is that he was intending—if he did possess the cocaine, that he intended to deliver this. And I'm also balancing the fact that the State does have to prove up intent also. That the undue prejudice probably is not horribly great because of the—the amount of cocaine probably is not going to be one where it's personal use. That somehow bringing an old delivery is going to be the controlling weight as to whether or not he intended to deliver it, but I will allow it in. I'll allow it in to prove up intent under Watkins over defense's obviously objection."

¶ 13 C. The Jury Trial

¶ 14    In June 2021, the trial court conducted defendant's jury trial at which the following testimony was presented.

¶ 15    1. *Sergeant Greg Melzer*

¶ 16    Illinois State Police Sergeant Greg Melzer testified that on August 1, 2019, he was "sitting on Interstate 90 watching westbound traffic" when he saw a gray Chevrolet with Minnesota license plates. As the car passed him, the driver "completely turn[ed] his body and look[ed] over his shoulder back at me" and made an immediate lane change. Melzer followed the vehicle and radioed Trooper Alan Taylor, who was about a mile away, advising him to be on the lookout for the car.

¶ 17    Melzer testified he observed the car quickly exit the tollway and pull into a gas station parking lot. The car went "toward the *** gas station gas pumps. It did not get all the way up to the gas pump." Melzer then parked behind the car and approached it on foot. Melzer identified defendant as the driver and sole occupant of the car.

¶ 18    Melzer testified that he asked defendant if he was getting gas and defendant said yes. However, Melzer looked at the car's fuel gauge and noticed it showed the gas tank was more than three-quarters full. Defendant saw Melzer "looking at the gas gauge and then said, oh, no, I'm going to the bathroom." At that point, Melzer asked defendant to move his car away from the gas pumps off to the side of the parking lot. Once the cars were moved, Melzer asked defendant to come back to his squad car, which defendant did.

¶ 19    Melzer had defendant sit in the front seat of his squad car for officer safety and to expedite the traffic stop. In the car, defendant told Melzer that he was traveling from Indiana to Minnesota, after spending three days in Hammond, Indiana. While defendant answered questions, Melzer used his computer to obtain information about the vehicle defendant had been driving.

- 4 -

Melzer testified that he learned (1) the car defendant was driving was not registered to him, (2) defendant's Minnesota driver's license was revoked, and (3) his Illinois driver's license was suspended.

¶ 20 While in the car, defendant leaned towards Melzer "clearly trying to see what [Melzer] was typing or *** looking at on [his] computer." Defendant appeared nervous, and his carotid artery was visibly pulsing in his neck.

¶ 21 Because Melzer believed defendant was possibly involved in criminal activity due to his behavior, Melzer requested that Taylor conduct a dog sniff on defendant's car. Taylor conducted the dog sniff, which resulted in a positive alert. Melzer asked defendant if there was any reason why the dog alerted to the presence of narcotics in the vehicle. Defendant replied, "Oh, that's because my nephew smoked weed in the car the previous day." However, Melzer had not smelled any cannabis at any point during the stop.

¶ 22 Melzer explained to defendant that he was going to search the car and asked "if everything in the vehicle belonged to him." Defendant paused and then said yes. Melzer and Taylor searched the car. Underneath the truck liner, they found a white plastic shopping bag bearing the words "Hang Time." Melzer stated that he believed "Hang Time" was a store in Indiana.

¶ 23 The shopping bag contained five individual bags each containing a white, rock-like substance that field tested positive for cocaine. Melzer placed defendant under arrest. When Melzer told defendant that drugs were found in the car, defendant said only "nah." According to Melzer, defendant's demeanor indicated he "clearly knew [the drugs] were in the car, was surprised they had been found and was at that point either dejected or defeated." Melzer testified that he collected the evidence he found in the trunk and submitted it to the Illinois State Police Crime Lab for processing. (We note that the crime lab recovered two latent fingerprints on the shopping bag and

the Ziploc bag but determined that neither of those fingerprints matched defendant.)

¶ 24      At the police station, Melzer questioned defendant about the cocaine. Defendant denied the cocaine belonged to him. Melzer said to defendant that the cocaine either belonged to him or the owner of the car—defendant's girlfriend—and defendant agreed.

¶ 25                          2. *Deborah McCray*

¶ 26      The parties stipulated that Deborah McCray, an expert in narcotics identification, weighed and tested the substance found by the officers, determining it to be 126.1 grams of cocaine. The parties further stipulated "[defendant] has previously been convicted of the offense of dealing in cocaine. The conviction from May 20th, 1999, for dealing in cocaine arose out of Case No. 45G01-9812-CF-00232 in Lake County, Indiana."

¶ 27                          3. *Chris Washburn*

¶ 28      Chris Washburn, a detective sergeant employed by the Belvidere Police Department, testified as an expert in the field of narcotics investigations and transactions. Washburn stated that the weight of the cocaine found in defendant's car indicated a total value of approximately $6700. Washburn explained that a "single serving" of cocaine would be roughly one-tenth of a gram and individuals who buy cocaine for personal use typically purchase, roughly, half a gram to a gram at a time. Washburn testified that the 126 grams of cocaine found in the present case was "a lot of cocaine" that far exceeded the typical personal use amount.

¶ 29      Washburn also testified that the cocaine being separated into five different bags inside of a larger bag further indicated that it was intended for distribution. Washburn testified it is common for people engaged in drug trafficking to (1) travel in a car not registered to them or in a rental car and (2) try to conceal the cocaine within the car, as happened in this case.

¶ 30                          4. *Defendant*

¶ 31 Defendant testified that when officers pulled him over, he was headed to his home in Minnesota from Hammond, Indiana, where he had spent two days visiting his father. Defendant testified that while he was in Indiana, his nephew had driven his vehicle for a few hours. When the nephew returned with the car, it smelled like marijuana, causing defendant to leave his nephew behind when he left Indiana. Defendant testified that he had put his items in the back seat while traveling and never looked in the trunk after his nephew had possession of the car. Defendant stated he was shocked when the officers found the cocaine. He stated to the jury that it was not his cocaine, and he did not know how it got in the trunk.

¶ 32 5. *The Jury Instructions and Verdict*

¶ 33 The trial court read to the jury the following limiting instruction regarding defendant's prior conviction:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received on the issue of the defendant's intent to deliver and may be considered by you only for that limited purpose. It is for you to determine what weight should be given to this evidence on the issue of intent to deliver."

¶ 34 The jury found defendant guilty of both counts.

¶ 35 D. The Posttrial Proceedings

¶ 36 In July 2021, defendant filed a posttrial motion arguing, in part, that (1) the State failed to prove that defendant knew the drugs were in the trunk of the borrowed car and (2) the trial court erred by admitting defendant's prior delivery conviction as evidence of his intent to deliver.

¶ 37 In August 2021, trial counsel filed a motion to withdraw based upon "differences

- 7 -

that [had] arisen" between counsel and defendant. The following day, the trial court granted counsel's motion and appointed new counsel to represent defendant.

¶ 38    In December 2021, defendant filed an amended posttrial motion that adopted the previous posttrial motion but also alleged that trial counsel rendered ineffective assistance by, among other things, failing to introduce evidence that two fingerprints found on the plastic bags did not belong to defendant.

¶ 39    In May 2022, the trial court conducted a hearing on the amended posttrial motion at which defendant and his initial trial counsel testified.

¶ 40    Trial counsel testified that he discussed the fingerprints with defendant, but defendant did not want to bring up the fingerprint evidence at trial because it could implicate his nephew. Defendant did not even want to disclose his nephew's name. In addition, defendant informed his counsel that the nephew could not testify because he was murdered before trial.

¶ 41    Defendant testified that he never (1) asked trial counsel *not* to attempt to get the fingerprints found on the bags into evidence or (2) told trial counsel he was concerned about the fingerprints leading back to his nephew.

¶ 42    The trial court found that (1) defendant's testimony was not credible, (2) trial counsel had discussed the fingerprint evidence with defendant, and (3) defendant was hesitant to identify or implicate his nephew. The court reasoned that disclosing the nephew's identity would have not necessarily been exculpatory but instead would likely have simply added a codefendant. Ultimately, the court concluded that trial counsel was not ineffective and denied the motion for a new trial.

¶ 43    The trial court later sentenced defendant to 22 years in prison.

¶ 44    This appeal followed.

¶ 45                              II. ANALYSIS

¶ 46         Defendant appeals, arguing (1) the trial court erred by admitting defendant's prior conviction in 1999 for delivery of cocaine, (2) trial counsel was ineffective for failing to introduce fingerprint evidence, and (3) the State failed to prove defendant guilty beyond a reasonable doubt. We disagree and affirm.

¶ 47              A. The Trial Court's Admission of Other-Crimes Evidence

¶ 48         Defendant first argues that the trial court abused its discretion by allowing the State to introduce evidence of defendant's prior felony conviction for dealing cocaine. We disagree.

¶ 49                   1. *The Applicable Law and Standard of Review*

¶ 50         "The term other-crimes evidence encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial." *People v. Spyres*, 359 Ill. App. 3d 1108, 1112, 835 N.E.2d 974 (2005). "Evidence of other crimes is generally inadmissible to show a defendant's propensity to commit the charged criminal conduct." *People v. Watts*, 2022 IL App (4th) 210590, ¶ 39. However, other crimes evidence may be admissible to show " 'motive, intent, identity, absence of mistake, *modus operandi*, or any other relevant fact other than propensity.' " *Id.* (quoting *People v. Smith*, 2015 IL App (4th) 130205, ¶ 21, 29 N.E.3d 674).

¶ 51         When the State offers other-crimes evidence to demonstrate intent, the other crime must have some threshold similarity to the crime charged. *People v. Larke*, 2018 IL App (3d) 160253, ¶ 17, 127 N.E.3d 760. However, even when relevant for a permissible purpose, the trial court may exclude other-crimes evidence if its prejudicial effect substantially outweighs its probative value. *Id.* The admissibility of other-crimes evidence "should not, and indeed cannot, be controlled solely by the number of years that have elapsed between the prior offense and the crime

charged." *People v. Illgen*, 145 Ill. 2d 353, 370, 583 N.E. 2d 515, 522 (1991).

¶ 52          "The admissibility of evidence rests within the trial court's sound discretion, and the court's decision to admit evidence will not be disturbed absent an abuse of discretion." *Larke*, 2018 IL App (3d) 160253, ¶ 18. "The trial court abuses its discretion only where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the trial court's decision." *Id.*

¶ 53                                          2. *This Case*

¶ 54          Defendant argues that the trial court erred by admitting his prior Indiana conviction for dealing cocaine because the resulting prejudice substantially outweighed its probative value. Specifically, defendant contends (1) the prior conviction involved "hand to hand" dealing while the current charge involved cocaine found in the trunk of a car and (2) the fact that the conviction was 20 years old lessened its probative value. We disagree.

¶ 55          It is well-settled law in Illinois that the State may use defendant's prior convictions for drug dealing as evidence of intent to deliver the drug for which the defendant is currently charged. See *People v. Foreman*, 2019 IL App (3d) 160334, 133 N.E.3d 1175; *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 46, 25 N.E. 3d 1189. ("Illinois courts have routinely allowed evidence of a defendant's prior or subsequent drug transactions to be admitted into evidence at trial to establish a defendant's intent to deliver the drug for which the defendant is currently charged."). Further, when other-crimes evidence is being admitted to prove intent, the conviction and the present charge need bear only general similarities. *Watkins*, 2015 IL App (3d) 120882, ¶ 47 ("[T]here will always be some dissimilarity between the facts of the other-crimes evidence and the facts of the current crime charged.").

¶ 56          We find *Foreman* and *Watkins* to be instructive.

¶ 57　　　　In *Foreman*, the defendant was charged with, among other things, intent to deliver cocaine. *Foreman*, 2019 IL App (3d) 160334, ¶ 2. To prove intent, the State offered evidence of the defendant's prior conviction for dealing cannabis, and the trial court admitted that conviction. *Id.* ¶ 32. The defendant appealed, and the appellate court affirmed, concluding that, although the prior conviction involved cannabis and the charged offense involved cocaine, the offenses were sufficiently similar. *Id.* ¶ 20. Further, the court concluded that the other-crimes evidence was probative because intent to deliver was an element of the charged offense that the State was required to prove. *Id.*

¶ 58　　　　Similarly, in *Watkins*, the appellate court concluded that evidence of a prior conviction for intent to deliver cannabis was sufficiently similar to the charge of intent to deliver cocaine to be admitted. *Watkins*, 2015 IL App (3d) 120882, ¶ 47. In so holding, the court emphasized that the evidence was (1) highly probative circumstantial evidence of intent and (2) any unfair prejudice was minimized by (a) the trial court's admonishing the jury with a limiting instruction and (b) the brief manner in which the evidence was presented to the jury. *Id.* ¶ 50.

¶ 59　　　　Here, the prior conviction and current charge both involved the intent to distribute cocaine. We are not persuaded by defendant's argument that the prior conviction and current charge are dissimilar because the prior conviction involved "hand-to-hand" delivery while the current charge involved cocaine found in the trunk of a car.

¶ 60　　　　We also disagree with defendant that the age of the prior conviction rendered its probative value substantially outweighed by the risk of unfair prejudice. The record shows that the trial court carefully considered this matter during the hearing on the State's motion *in limine*, finding that the conviction was relevant and probative despite it being 20 years old because, as the State argued, defendant was "locked up for other offenses" over the years. In other words,

defendant was clearly not a model citizen who chose to stay out of trouble during that 20-year period. We agree with the trial court.

¶ 61 Additionally, because the only witness testimony was that of defendant and the arresting officers, the prior conviction was a highly probative piece of circumstantial evidence on the issue of intent. Importantly, any unfair prejudice caused to defendant by introduction of the conviction was reduced by the trial court issuing a limiting instruction to the jury on the use of the conviction. *See Watkins*, 2015 IL App (3d) 120882 ¶ 50 (concluding that prejudice was minimized when other-crimes evidence was presented without unnecessary information and court issued a limiting instruction).

¶ 62 Accordingly, because nothing in the record shows that the trial court's decision was "arbitrary, fanciful, or unreasonable," we conclude the court did not abuse its discretion by admitting the evidence of defendant's prior conviction.

¶ 63 B. The Ineffective Assistance of Counsel Claim

¶ 64 Defendant next argues that his counsel's failure to introduce fingerprint evidence constituted ineffective assistance of counsel. We disagree.

¶ 65 1. *The Applicable Law and Standard of Review*

¶ 66 "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90, 162 N.E.3d 223 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability is a probability which undermines the confidence in the outcome of the trial." *People v. Sturgeon*, 2019 IL App (4th)

170035 ¶ 84, 126 N.E.3d 703. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697).

¶ 67        We review a defendant's claim of ineffective assistance of counsel by deferring to the trial court's findings of fact unless they are contrary to the manifest weight of evidence, but we assess *de novo* the ultimate legal question of whether counsel was ineffective. *People v. Walker*, 2021 IL App (4th) 190073, ¶ 29, 188 N.E. 3d 1235.

¶ 68                                    2. *This Case*

¶ 69        Defendant argues that trial counsel provided ineffective assistance by failing to introduce evidence of latent fingerprints found on the bags of cocaine. Defendant claims this evidence would have been exculpatory. We disagree.

¶ 70        During a posttrial hearing, the trial court addressed defendant's allegations of ineffective assistance. Trial counsel testified that he refrained from presenting evidence of the fingerprints as a part of his trial strategy, largely because defendant told him that "we did not necessarily want to touch on that point." Counsel's overall trial strategy was to show that the nephew was the person who potentially placed the contraband in the vehicle, but defendant "did not want to specifically disclose the [nephew's] name." Based on that interaction with defendant, counsel concluded that defendant believed the prints found on the bag would identify his nephew as the person who placed the cocaine in the trunk. Defendant, on the other hand, testified that he never told counsel that he did not want to pursue the fingerprints.

¶ 71        Ultimately, the trial court found that defendant was not credible. The court also reasoned that the latent fingerprint evidence was not exculpatory; instead, by identifying the person who left the fingerprints, the State could also charge that person as a codefendant. The inference

would remain that someone else placed the cocaine in defendant's vehicle for defendant to deliver. We agree with the court's assessment.

¶ 72 We note that because nothing about the record remotely refutes the trial court's credibility determination, we defer to the trial court in that respect. *People v. Carter*, 2021 IL App (4th) 180581, ¶ 68, 188 N.E.3d 391 ("Any time a trial court serves as a fact finder, perhaps the single most important thing the court can do is say whom it believes and whom it does not. When the trial court favors us with such a finding, we are at the height of our deference to that court.").

¶ 73 Considering that (1) defendant would not provide the name of his nephew to trial counsel, (2) defendant indicated he did not want to pursue the introduction of the fingerprints, and (3) the introduction of the fingerprint evidence would have done nothing to prevent the State from arguing that defendant knew about the drugs, counsel reasonably concluded it was best to accede to defendant's wishes. And counsel made the same argument anyway that he would have made if the fingerprint evidence had been introduced—namely, that someone else put the drugs in the car.

¶ 74 In addition, counsel's decision not to present the fingerprint evidence did not prejudice defendant. As the trial court explained in the posttrial hearing, the fingerprint evidence would not have necessarily exculpated defendant because (1) the jury already heard defendant testify that he had no idea how the drugs got into the trunk and that his nephew had prior access to the car and (2) the State introduced testimony regarding defendant's behavior during and after the traffic stop, suggesting defendant knew of the drugs in the trunk.

¶ 75 On this record, any evidence showing that the drugs had someone else's fingerprints on them would not have had a reasonable probability of changing the jury's guilty verdict. Accordingly, defendant was not prejudiced by trial counsel's decision regarding the fingerprints.

¶ 76 C. The Sufficiency of the Evidence Claim

¶ 77	Defendant next argues that the State failed to prove beyond a reasonable doubt that defendant knowingly possessed the cocaine. We disagree.

¶ 78	1. *The Applicable Law and Standard of Review*

¶ 79	"When a defendant challenges the sufficiency of the evidence, a court of review must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 80	It is unlawful to knowingly possess with intent to deliver between 100 to 400 grams of cocaine. 720 ILCS 570/401(a)(2)(B) (West 2018)). Possession can be actual or constructive. *People v. Johnson*, 2013 IL App (4th) 120162, ¶ 24, 986 N.E.2d 782. "Constructive possession is shown where the defendant exercises no actual personal present dominion over the narcotics, but there is an intent and a capability to maintain control *** over them." (Internal quotation marks omitted.) *Johnson*, 2013 IL App (4th) 120162, ¶ 24.

¶ 81	Knowledge is usually proved by circumstantial evidence because it can rarely be shown by direct proof. *People v. Sanchez*, 375 Ill. App. 3d 299, 301, 873 N.E.2d 509, 511 (2007). Knowledge may be proved by presenting sufficient evidence from which a jury may reasonably infer that the defendant knew of the controlled substance's existence at the place officers found it, including acts, conduct or statements, and the surrounding facts and circumstances. *Id.*

¶ 82	2. *This Case*

¶ 83	Defendant contends that the State failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine because (1) the car was not registered in his name, (2) he testified

that another person had driven the car, and (3) the State did not present evidence of defendant's fingerprints on the cocaine. We disagree.

¶ 84 Viewing the evidence in the light most favorable to the State, a rational trier of fact could have easily concluded that defendant knew the cocaine was in the trunk of the car. Defendant had been pulled over on his return trip from Indiana, which he allegedly made to pick up his nephew, despite not returning with his nephew. Melzer testified in detail that defendant appeared unusually nervous during the traffic stop. He first told Melzer that he pulled into the gas station for fuel, but once he saw Melzer looking at the fuel gauge, which showed the car's gas tank was more than three quarters full, defendant then said that he pulled over to go to the bathroom.

¶ 85 After a positive canine alert on the car, defendant immediately claimed that his nephew had smoked cannabis in the car the previous day. When officers asked if everything in the car belonged to him, he paused before saying yes. Defendant's only response to being told drugs were found in the car was "nah." Further, expert testimony placed the value of the cocaine, which was hidden under the lining of the car's trunk, at approximately $6700, an amount large enough to infer that defendant did not possess the cocaine for his own personal use, but instead for delivery to others.

¶ 86 When viewing all of the evidence in the light most favorable to the State, we conclude that the jury could have reasonably—and easily—found that defendant knowingly possessed the cocaine.

¶ 87                                    III. CONCLUSION

¶ 88 For the reasons stated, we affirm the trial court's judgment.

¶ 89 Affirmed.